CITY OF PORT HURON v. WRIGHT.

1. TAXATION—PROPERTY TAXABLE—CREDITS—EXECUTORS—CLAIMS DUE FROM LEGATEES.

Where a testator bequeathed to his partners his interest in the partnership assets, consisting largely of the stock in trade, fixtures, etc., of a merchandising business, on condition that they pay 90 per cent. of its appraised value to his executors in 15 equal annual installments, with interest, the legatees, by remaining in possession and making some of the payments, entered into a contract and incurred an indebtedness to the executors which might be enforced by an action, and created a credit which was taxable to the executors under section 3837, subd. 6, 1 Comp. Laws.

2. SAME—STATE TAX COMMISSION—REVIEW OF ASSESSMENTS—NOTICE—SUFFICIENCY.

A notice published by the State tax commission May 13th of a hearing to review assessments to be held May 18th is a sufficient five days' notice under section 152, Act No. 154, Pub. Acts 1899.

3. SAME—CREDITS—ASSESSMENT — INCLUDING EXEMPT PROPERTY.

A claim that an assessment of credits due to the executors of an estate was excessive because that portion of the estate constituting the residue thereof, bequeathed to certain benevolent societies, was exempt under section 3832, subd. 1, 1 Comp. Laws, is untenable, where only one of such societies was incorporated under the laws of this State, and it does not appear by the record that the interest of that one was included in the assessment.

4. SAME—OVERASSESSMENT—INCLUDING EXEMPT PROPERTY.

Where the entire of the credits due to executors of an estate was not the property of a benevolent society as residuary legatee, but only so much thereof as should remain after paying expenses of administration, debts, and specific legacies, a claim that the assessment of such credits was excessive because the interest of the benevolent society, exempt under section 3832, 1 Comp. Laws, was included, amounts only to a claim that the assessing officers placed too high a valuation on the taxable portion of the credit, an exercise of judgment which cannot be collaterally attacked.

5. JUDGMENT—RES ADJUDICATA — PROBATE COURT — INHERITANCE
TAX — BASIS OF ASSESSMENT — CONCLUSIVENESS ON ASSESSING
OFFICERS.

A decision of the probate court that the amount of inheritance
tax to be paid to the State by executors should be fixed not
"at the present value of the future payments to be made by"
certain legatees, but "from time to time as the money or
the property of the estate should come into the hands of the
executors," is not an adjudication that the executors have no
such property in the possible future payments by the legatees
as to make the same taxable to the executors as credits un-
der section 3837, subd. 6, 1 Comp. Laws.

Error to St. Clair; Tappan, J. Submitted October 14,
1907. (Docket No. 182.) Decided December 10, 1907.

Assumpsit by the city of Port Huron against Asa H.
Wright and Charles E. Boyce, executors of the last will
and testament of Frederick Saunders, deceased, for taxes.
There was judgment for plaintiff, and defendants bring
error. Affirmed.

*Phillips & Jenks* (*Jasper C. Gates*, of counsel), for
appellants.

*Joseph Walsh*, for appellee.

This is a suit to recover city taxes for the years 1903
and 1904. In the circuit court it was tried without a jury,
a finding of facts rendered, and judgment entered for
plaintiff. We quote from said finding of facts:

" 1. Frederick Saunders, a resident of the second ward
of Port Huron, and who in his lifetime had been engaged
in business with Albert and Fred J. Dixon under the firm
name of F. Saunders & Company, died July 21, 1900,
leaving an estate consisting of real estate and per-
sonal property, and a will duly executed and admitted to
probate in St Clair county, October 8, 1900.

" 2. The fifth and sixth paragraphs of said will are as
follows:

" '5th. I give, devise and bequeath to my partners, Albert Dixon
and his son, Fred J. Dixon, to them, their heirs and assigns, forever,

all my right, title and interest in the firm, business and property of F. Saunders & Co., including all my interest in the goods, furniture, fixtures, book accounts, notes, dues, claims, demands, teams, horses, wagons, street R. R. bonds, and stock now owned by said firm of F. Saunders & Co., and all my interest in the real estate owned by said firm at my decease and the furniture, fixures and buildings now used by said firm in carrying on their business and the land on which said building stands and used with the same, but all the devises, legacies and bequests contained in this 5th clause of this my will are upon this express condition and with this express reservation that the said Albert and Fred J. Dixon shall pay to my executors hereinafter provided for ninety (90) per cent. of the appraised value of the property herein given to them, such amount to be paid in fifteen equal annual payments or faster if the said Dixons so elect and also shall pay interest annually on all sums unpaid at the rate of one (1) per cent. per annum, such appraisal to be made by appraisers to be appointed by the probate court of St. Clair Co., and their appraisal to be taken as the basis for an estimate for the amount to be paid. And further condition to be complied with by the said Dixons is that they shall give to the said executors security for the payments to be made by them if required by said executors so to do, such security to be to the satisfaction of the said executors.

"'6th. All my private, individual property shall be converted into money by my executors hereinafter provided for, and whenever a sufficient sum shall be realized for a dividend either from my individul property or from payments by the said Dixons or both, such dividends shall be made and the same shall be paid over to the several legatees hereinbefore mentioned pro rata to the amounts given them.'

"3. After making certain specific bequests, aggregating about $22,000, the residue of the property was, by the will, divided equally among five Baptist Benevolent Societies: The American Baptist Home Mission Society, the American Baptist Missionary Union, the American Baptist Education Society, Baptist Ministers' Aid Society of Ohio, Indiana, Michigan, Illinois, and Wisconsin, and the Baptist Convention of the State of Michigan. The interests of all these societies were afterwards transferred to the Baptist Convention of the State of Michigan, a domestic corporation, incorporated under Act No. 42 of the Session Laws of 1842.

"4. The probate court appointed the defendants herein and R. S. Patterson executors and trustees, who qualified and filed an inventory of the property of the estate. Pat-

terson subsequently deceased. Appraisers were appointed as provided for in the fifth paragraph of the will and the value of the interest of the estate in the assets to be conveyed to them, was as follows: Interest in the partnership assets of the estate of F. Saunders & Company, $47,300; south part of lot three of Block 55, White's plat of Port Huron, $12,500; total $59,800. Ninety per cent. of this appraised value would be $53,820, and each annual payment $3,588.

"5. Albert and Fred J. Dixon continued the business under the name of F. Saunders & Co. and were assessed for the personal property, wholesale grocery stock, and real estate, store building of the partnership, and paid taxes thereon, and prior to the beginning of this suit had made to the said executors three of the payments provided· for in the fifth paragraph of the will.

"6. The first report of the executors to the probate court was made in January, 1902, showing that they had received one payment and interest from the Dixons, and after paying expenses and a percentage of the specific bequests had on hand cash $591.24.

"7. The executors' second annual report was filed in January, 1903, showing the receipt of a second payment from the Dixons, and interest, and after payment of expenses and a percentage of the specific bequests, the cash balance in their hands was $869.20.

"8. The third annual report of the executors was filed January, 1904, showing the receipt of a third payment and interest from the Dixons, and a balance on hand, in cash, of $4,822.30.

"9. During each of these years, the executors had no other personal property in their possession or under their control, unless the amounts payable by the Dixons under the fifth section of the will constituted an assessable credit.

"10. On October 14, 1903, a decree was entered in the circuit court for the county of St. Clair, in chancery, subrogating the Baptist Convention of the State of Michigan in the place and stead of all the other residuary legatees, and authorizing the Dixons to pay all the legacies due to the residuary legatees to the said Baptist Convention.

"On December 21, 1903, the probate court for the county of St. Clair made an order in the estate of Frederick Saunders to the same effect and directing that all of the interests of the other residuary legatees be assigned

and transferred to the said Baptist Convention, all of the residuary legatees and the executors being parties to both proceedings and consenting thereto.    *    *    *

"15. For 1903 the assessors of Port Huron assessed the said executors for personal property, $23,900. The board of State tax commissioners raised this assessment to $35,900. The notice of the meeting of the board of State tax commissioners to examine and review the rolls of Port Huron was dated the 9th day of May, 1903, the first publication being had May 13th, 1902, the date of the hearing named therein was the 18th of May, 1903, at ten o'clock a. m.    *    *    *

"The total tax levied upon this assessment for 1903, was $670.07.

"For 1904 the board of assessors of Port Huron assessed the defendants' personal property $23,900, no change being made by the board of review or the State tax commissioners. The total tax levied upon the above assessment for 1904 was $507.60.

"17. The personal tax assessed to the executors of the estate of Frederick Saunders for each of the years was based entirely upon the unpaid payments of the Dixons under the fifth section of the will. The said unpaid installments being treated and considered as a credit within the meaning of section six of paragraph 3831, Compiled Laws of 1897.

"18. January 6, 1904, in the probate court for St. Clair county, an order was entered in the estate of Frederick Saunders fixing and determining the amount of inheritance tax upon said estate due to the estate was fixed at the present value of the future payments to be made by the Dixons. The executors then filed a petition asking for a rehearing in the matter and determining the tax, and after due notice to all parties interested, including the auditor general of the State of Michigan, the county treasurer of St. Clair, the auditor general being present by his deputy, and one of the deputy attorney generals of the State of Michigan appearing for the county treasurer and the State of Michigan, an order was entered that the prior order determining the amount of inheritance tax be set aside and that the tax as to all legacies be paid and determined from time to time as the money and property of the estate should come into the hands of the executors."

The circuit court also found the following conclusions of law:

"1. The effect of paragraph five of the will of Frederick Saunders was to provide for a sale of his partnership interest to the Dixons, who by their action entered into contract to pay to the executors the amount of the appraised value, and this action created a taxable credit in the hands of the executors to the amount of 90 per cent. of the appraisal. * * *

"3. The assessment of 1903 and the taxes levied upon it are valid.

"4. The assessment made for 1904 and the taxes levied thereon are valid.

"5. It is further my conclusion that the several amounts to be paid to the Baptist societies named in the will cannot be deducted from the amount assessed, as exempt from taxation. It is conceded in argument that but $100 to the local church has been paid and that it will be several years before the specific bequests are paid and the bequests to these residuary legatees become payable.

"I further find that there can be no deduction from the assessment of 1904, $23,900, because of the order of the judge of probate dated December 21, 1903, directing payment of the several bequests to the Baptist societies direct, and discharging the executors as to these payments.

"The amount originally to be paid by the Dixons was $59,800; the assessment of $23,900 does not indicate that any of the moneys or 'credits' to be paid by the Dixons either to the executors for the societies, or by the Dixons direct to the society named in the order were assessed at all.

"There is no proof that either the societies or the executors gave notice to the assessing officers of 1904, of the effect of the order of the judge of probate of December 21, 1903, closing the estate as to the payments to the Baptist societies.

"By the terms of the will this portion of the estate could not be closed for several years after 1904.

"If the assessors included the amount payable to the Baptist societies defendants cannot complain as the burden was upon them, under the circumstances, to give notice of the change made by the judge of probate's order.'

Judgment was therefore directed to be and was entered in favor of the plaintiff and against the defendants for the taxes for the years 1903 and 1904, and the interest and fees thereon amounting to $1,458.25.

CARPENTER, J. (after stating the facts). First. The first question for our consideration arises from the contention of defendants that the court erred in his first conclusion of law. They deny that the Dixons have by their action entered into a contract to pay to the executors 90 per cent. of the appraised value of the estate bequeathed to them. They contend that "the Dixons are under no absolute obligation, express or implied, to pay to the executors anything whatever;" that "the title vested in the Dixons by the will was upon a condition subsequent. * * * The probability that the Dixons will continue to make payments is not a credit taxable under section 3837, subd. 6, 1 Comp. Laws. * * * There is no actual indebtedness by the Dixons to defendants which the latter could enforce by an action."

There would be greater plausibility in these contentions if the property bequeathed consisted entirely of real estate or some other tangible asset which the legatees might use without impairing its value. But the property bequeathed consists largely of personalty which the testator obviously intended his legatees should expose to the hazard of trade. He thus gives them authority to destroy the identity of the property; to sell it or exchange it, and to dissipate the proceeds. His intent that his executors should have no other means of enforcing their claim than a reclamation of property of this character cannot be presumed. Moreover, the existence of such an intent is negatived by the concluding language of paragraph 5, which imposes upon his legatees the duty of giving to his executors satisfactory security for the payments to be made by them. In our judgment, defendants' contentions are answered by a proper construction of the fifth paragraph of the will and the action of the Dixons. Paragraph 5 is in effect an offer to sell on the terms therein mentioned to the Dixons, and when they accepted this offer—and their acceptance is proved by the fact that they have remained in possession of said asset and paid a portion of the purchase money—a contract was entered into and a credit

created which is taxable under the law above referred to.

In principle the case is not unlike that of *City of Marquette* v. *Michigan Iron & Land Co.*, 132 Mich. 130, and it is ruled by that case. In stating this conclusion we do not mean to say that in the event of the Dixons failing to comply with their contract, that the executors have no other remedy than to bring a suit at law to recover this credit. If they have exercised the care contemplated by the will, they have exacted security for its payment, and of course will have the right to resort to said security in case of default. But their remedies, whatever they may be, do not distinguish the obligation in question from that of an indebtedness secured by a mortgage or by a land contract. They do not render that obligation anything less than a credit.

*Second.* The authority of the State board of assessors to raise the assessment from $23,900 to $35,900 in the year 1903 is assailed upon the ground of the insufficiency of the notice of hearing. This notice was first published May 13, 1903, and the day of hearing therein named was May 18, 1903. It is contended that this notice was insufficient under the statute (Act No. 154, Pub. Acts 1899, § 152) reading:

"The notice of the time and place * * * shall be published * * * at least five days before the time at which said assessor is required to appear."

The notice was sufficient under the following recent decisions of this court: *Chaddock* v. *Barry*, 93 Mich. 542 (18 L. R. A. 337); *Crozier* v. *Allen*, 117 Mich. 171; *Lemon* v. *Hampton*, 128 Mich. 182.

*Third.* It is contended that the assessments are excessive because that part of the credit which was bequeathed to the residuary legatees is exempt from taxation under subd. 1, § 3832, 1 Comp. Laws, which reads:

"The following personal property shall be exempted from taxation, to wit: *First*, The personal property of benevolent, charitable, educational and scientific institutions, incorporated under the laws of this State."

When the taxes for the year 1903 were assessed, the residuum belonged in equal proportions to five Baptist benevolent societies, only one of which, viz., the Baptist Convention of the State of Michigan, was incorporated under the laws of the State of Michigan. Whether such interest of the Baptist Convention was exempt—the interests of the other societies were certainly not exempt—we are not called upon to decide, for it does not appear by this record that such interest was included in the assessment made in 1903. The claim that the taxes for the year 1903 were excessive must therefore be overruled.

Late in 1903 there was transferred to said Baptist Convention the interest of the other Baptist benevolent societies in said residuum, and since that time said Baptist Convention has been the owner of the entire residuum. It is contended that the effect of this transfer to a corporation existing under the laws of the State of Michigan was to exempt said entire residuum from taxation under the law above mentioned, and that this residuum was improperly included in the assessment made for the year 1904.

If defendants are right in their contention that the residuum is exempt from taxation—and we make this assumption only for the purposes of this decision—the entire credit due from the Dixons was not exempt from taxation, but only so much thereof as represented the value of said residuum. In other words, so much of said credit as would be used in paying expenses of administration, debts, and specific legacies was liable to taxation. Under the theory most favorable to defendants, it was then the duty of the assessing officers to place a valuation on that part of said credit liable to taxation. There is nothing in the record to show that these officers did not endeavor to perform their duty, and it is therefore to be presumed that they did endeavor to perform that duty. The most that defendants can claim—and I am not sure that they have a right to claim that much—is this, viz., that in performing this duty the assessing officers placed too high a valu-

ation on the taxable portion of this credit. If they did, their judgment cannot be assailed in this proceeding. See *Williams* v. *City of Saginaw*, 51 Mich. 120; *Comstock* v. *City of Grand Rapids*, 54 Mich. 641.

*Fourth.* The probate court, as appears by the finding of facts, decided that the amount of inheritance tax to be paid to the State should be fixed, not " at the present value of the future payments to be made by the Dixons," but "from time to time as the money or the property of the estate should come into the hands of the executors." It is now contended that this determination of the probate court "is res adjudicata; that defendants have no such property in the possible future payments by the Dixons, as to make the same taxable." This contention is not sound unless it may be said that the probate court has decided that the obligation of the Dixons is not taxable as a credit under section 3837, subd. 6, 1 Comp. Laws. To us it seems clear that it has made no such decision. It has decided this (and only this) that for the purpose of computing the amount of the inheritance tax—a tax which is not to be paid annually, but is to be paid once for all—the value of the indebtedness due from the Dixons is to be fixed from time to time as payments to the executors are made. In making that determination the probate court was not called upon to determine and did not determine the question involved in this case. It was not called upon to construe the statute involved in this case, but was called upon to construe an entirely different statute, viz., the inheritance tax statute. The decision of that court was not, therefore, res adjudicata.

The judgment of the circuit court is affirmed.

McALVAY, C. J., and OSTRANDER, HOOKER, and MOORE, JJ., concurred.