Argued May 18; affirmed in part, reversed in part July 6, 1949

# THE METHODIST BOOK CONCERN *v.*
# STATE TAX COMMISSION ET AL.

208 P. 2d 319

*F. M. Phelps,* of Portland, argued the cause for appellant. On the brief were Phelps & Burdick, of Portland.

*Nathan L. Cohen,* Assistant Attorney General, of Salem, argued the cause for respondents. With him on the brief was George Neuner, Attorney General, of Salem.

Before LUSK, Chief Justice, and BRAND, ROSSMAN, BAILEY and HAY, Justices.

BRAND, J.

This is a suit for a declaratory judgment. The plaintiff Methodist Book Concern is a corporation organized under the laws of Ohio and licensed to do business in Oregon. The individual defendants are the members of the State Tax Commission and the sheriff and assessor of Multnomah County, Oregon. It is alleged that the plaintiff is a beneficial and charitable organization, not for profit, its objects being:

"* * * the publication, diffusion and circulation of moral and religious literature, books, periodicals and other publications, under the direction and in conformity with the customs of the Methodist Episcopal Church in the United States of America and the rules and regulations of the General Conference of said Church; the proceeds arising from the operations of the said corporation to be applied to the relief of Effective, Supernumerary, and Superannuated Ministers of the Methodist Episcopal Church in the United States of America, their wives, widows and children, as provided by the constitution of the said Church."

The defendants deny that the plaintiff is a charitable corporation. The principal office of the plaintiff is in Cincinnati, Ohio, but it is the:

"* * * owner of certain personal property consisting of a stock of books and publications published by the Methodist Church and by various other authors, and of certain furniture and fixtures used in connection with the sale and distribution of the stock of goods owned by Plaintiff and located at 231 S. W. Broadway, in the City of Portland, County of Multnomah and State of Oregon."

The plaintiff alleges that for many years the property described has been held exempt from taxation which is denied by the defendants. It is agreed that

the defendants intend to impose and collect a property tax against said property and the plaintiff seeks an injunction restraining such action and a declaratory judgment on the following questions:

"1. Is the stock and fixtures of Plaintiff located at 231 S. W. Broadway in the City of Portland, County of Multnomah, and State of Oregon, subject to taxation?

"2. Is the Plaintiff required to pay taxes upon the hereinbefore described property?

The defendants affirmatively allege:

"That plaintiff, in the premises located at No. 231 S. W. Broadway, in the City of Portland, County of Multnomah and State of Oregon, owns, displays and sells and distributes for profit, books, periodicals and sundry other items of personal property and carries on thereat activities in competition with book stores and business enterprises of similar nature which bear their just share of the burden of taxation."

Defendants pray that the plaintiff's complaint be dismissed and that the court enter a declaratory judgment to the effect that the plaintiff is not a charitable corporation and that the stock of goods and fixtures is subject to taxation.

Upon trial of the issues, the court held that the plaintiff is a charitable corporation and that the application of income from the operation of the book store constitutes a charitable activity. However, the court also held that the statutory exemption in favor of charitable corporations does not apply to foreign corporations. It held further that the exemption statute is constitutional and that the plaintiff's property is subject to ad valorem property taxation. The plaintiff appeals from that part of the decree which holds that its property

is subject to taxation and the defendants appeal from that part of the decree which holds that the plaintiff is a charitable corporation and that the application of the income therefrom constitutes a charitable activity. The pleadings present at least one justifiable controversy.

We will first consider whether tangible personal property situated in Oregon, owned by a charitable corporation, incorporated under the laws of Ohio but licensed to do business in Oregon, is subject to taxation in Oregon. For the purposes of this discussion, we will assume, without deciding, that the plaintiff is a charitable corporation. The statute provides as follows:

"All real property within this state and all tangible personal property situated within this state, except as otherwise may be provided by law, shall be subject to assessment and taxation in equal and ratable proportion. * * * O. C. L. A., § 110-101.

The foregoing provision remains unchanged in the subsequent amendment of the section. Oregon Laws 1941, ch. 440. The relevant provision of the statute granting tax exemption which also remains unchanged by subsequent amendments is as follows:

"The following property shall be exempt from taxation:
"* * *

"(3) The personal property of all literary, benevolent, charitable and scientific institutions incorporated within this state, and such real estate belonging to such institutions as shall be actually occupied for the purposes for which they were incorporated." O. C. L. A., § 110-201. (Amended, Laws 1945, ch. 296 and Laws 1947, ch. 382.)

 Plaintiff contends that the provision exempting from taxation the personal property of charitable corporations "incorporated within this state" should be construed to include foreign corporations licensed to do business in the state. We are compelled to reject the proposed construction. The language is plain. To interpret it as suggested would be to write a new statute which is not a judicial function. Even in the case of statutes which grant tax exemption to charitable corporations, without any express words limiting the exemption to domestic corporations, it has frequently, though not universally, been held as a matter of statutory construction that the exemption applies only to domestic corporations.

"The courts generally construe the constitutional and statutory provisions granting such institutions exemptions from taxation to refer and apply only to the institutions of the state, and not to those of foreign states, particularly when they do not dispense their charity or benevolence in the state, or devote their property therein to such purposes in the state. Exemption to charitable, educational, and religious organizations is predicated upon the fact that they render service to the state, for which reason they are relieved of certain burdens of taxation. The effect of an exemption is equivalent to an appropriation for the benefit or maintenance of foreign charities which, at best, have a remote chance only of benefiting the citizens of the state granting the exemption. And such exemptions are not ordinarily construed as applying to institutions established for the purpose of bestowing charity outside the limits of the state granting the exemption. Since the people of one state cannot be taxed for the benefit of the people of another state, there is no reason why an additional burden of taxation should be imposed on the remaining property in the state in order to benefit the people

of another state, and even assuming it to be within the power of the legislature of a state to exempt the property of a foreign charitable corporation, an exemption of such property will not be presumed to have been intended, in the absence of a clear legislative direction to that effect. But it seems that if an institution incorporated in one state has property devoted to charitable purposes within another state, such property will be entitled to the exemption bestowed by the tax laws of the latter state upon domestic corporations of such character, where the terms of the exemption provision are not inconsistent with such view." 51 Am. Jur. Taxation, § 556.

*In re Sautter's Estate,* 142 Neb. 42, 5 N. W. 2d 263; and see *In re Fiske's Estate,* 178 Cal. 116, 172 P. 390; *People v. Woman's Home Missionary Soc. of M. E. Church,* 303 Ill. 418, 135 N. E. 749; *Morgan v. Atchison, T. & S. F. Ry. Co.,* 116 Kan. 175, 225 P. 1029; *The People v. Seaman's Friend Soc.,* 87 Ill. 246; see also *City of Port Huron v. Wright,* 150 Mich. 279, 114 N. W. 76; *In re Cooper's Estate,* 229 Iowa 921; 295 N. W. 448.

Since the language of the statute expressly refers to institutions incorporated within this state, there is no occasion for the application of rules of construction which have been urged upon us.

■ "Statutory rules of construction cannot be employed for the purpose of importing ambiguity into language where no ambiguity exists." Inwall v. Transpacific Lumber Co., 165 Or. 560, 108 P. 2d 522, syl. 2.

■ Even if the statute should be deemed ambiguous we would be required to apply the rule repeatedly set forth in our opinions to the effect that tax exemption statutes should be strictly construed and that an exemption should be denied unless it is so clearly granted

as to be free of reasonable doubt. *Behnke-Walker Business College v. Multnomah County et al.,* 173 Or. 510, 146 P. 2d 614; *Benton County v. Allen et al.,* 170 Or. 481, 133 P. 2d 991; *Allen v. Multnomah County et al.,* 179 Or. 548, 173 P. 2d 475.

In the case at bar the language of the statute is clear and the exemption applies only to institutions "incorporated within this state". As we shall show, there is no necessity or justification for placing upon the statute a strained construction in order to avoid alleged unconstitutionality. The plaintiff asserts that O. C. L. A., § 110-201 as amended is violative of the equal protection clause of the federal constitution and of the following provisions of our state constitution:

> "No tax or duty shall be imposed without the consent of the people or their representatives in the legislative assembly; and all taxation shall be uniform on the same class of subjects within the territorial limits of the authority levying the tax." Oregon Constitution, Art. I, § 32.

> "The legislative assembly shall, and the people through the initiative may, provide by law uniform rules of assessment and taxation. All taxes shall be levied and collected under general laws operating uniformly throughout the state." Oregon Constitution, Art. IX, § 1.

■ It is recognized that the validity of the Oregon tax exemption statute must be tested by the provisions of the equal protection clause of the federal constitution and it is firmly established that the provisions of that clause extend to foreign corporations within the jurisdiction of the state. The constitution safeguards to such corporations the protection of laws applied equally to all in the same situation. *Quaker City Cab Co. v. Penn-*

*sylvania,* 277 U. S. 389, 72 L. ed. 927. On the other hand:

"* * * A law which affects the activities of some groups differently from the way in which it affects the activities of other groups is not necessarily banned by the Fourteenth Amendment. See e. g., Tigner v. Texas, 310 U.S. 141, 147, 84 L ed 1124, 1128, 60 S Ct 879, 130 ALR 1321. Otherwise, effective regulation in the public interest could not be provided, however essential that regulation might be. For it is axiomatic that the consequence of regulating by setting apart a classified group is that those in it will be subject to some restrictions or receive certain advantages that do not apply to other groups or to all the public. Atchison, T. & S. F. R. Co. v. Mathews, 174 U.S. 96, 106, 43 L ed 909, 913, 19 S Ct 609. This selective application of a regulation is discrimination in the broad sense, but it may or may not deny equal protection of the laws. * * *" Kotch v. River Port Pilot Comrs., 330 U. S. 552, 91 L. ed. 1093.

Again it has been said:

"No question is or could be made by the Corporation as to the right of a State, or a municipality with properly delegated powers, to enact laws or ordinances, based on reasonable classification of the objects of the legislation or of the persons whom it affects. 'Equal protection' does not prohibit this. Although the wide discretion as to classification retained by a legislature, often results in narrow distinctions, these distinctions, if reasonably related to the object of the legislation, are sufficient to justify the classification. * * *" New York Rapid Transit Corporation v. New York, 303 U. S. 573, 82 L. ed. 1024.

Special regulations applicable only to foreign corporations have been upheld when tested by the equal

protection clause. In *Metropolitan Casualty Ins. Co. v. Brownell*, 294 U. S. 580, 79 L. ed. 1070, the court said:

"* * * courts may not declare a legislative discrimination invalid unless, viewed in the light of facts made known or generally assumed, it is of such a character as to preclude the assumption that the classification rests upon some rational basis within the knowledge and experience of the legislators. A statutory discrimination will not be set aside as the denial of equal protection of the laws if any state of facts reasonably may be conceived to justify it. * * *"

See also *Lincoln National Life Insurance Co. v. Read*, 325 U. S. 673, 89 L. ed. 1861. By way of summary we quote the following:

"A statute which unreasonably discriminates against foreign, in favor of domestic, corporations offends the equal protection clause of the Fourteenth Amendment. Where there is no other ground of distinction, a classification of corporations within the state, for the purpose of legislative regulation, into foreign corporations and domestic corporations is an unreasonable and arbitrary classification amounting to a denial of the equal protection of the laws. On the other hand, a state legislature may distinguish between foreign and domestic corporations for some purposes, and a legislative discrimination between such corporations or between foreign corporations and natural persons will be upheld where it has a reasonable basis and is not arbitrary. The ultimate test of validity of a legislative discrimination between foreign and domestic corporations is not whether there are differences between them, but whether such differences are pertinent to the subject of classification and have a rational relationship to the legislative command. * * *" 16 C. J. S., Constitutional Law, § 504.

*Northwest Auto Co. v. Hurlburt,* 104 Or. 398, 207 P.
161; *State v. Kozer,* 116 Or. 581, 242 P. 621; *Fox v.
Galloway,* 174 Or. 339, 148 P. 2d 922.

"It is everywhere agreed that neither the Four-
teenth Amendment to the Federal Constitution nor
the the equality and uniformity requirements of the
state constitutions prohibit the making of classi-
fications in state legislation relating to taxation.
The power of a state to make reasonable and natural
classifications for purposes of taxation, it has been
said, is clear and not questioned. * * *" 51
Am. Jur., Taxation, § 173.

See 1 Cooley, Taxation, 4th ed., § 332.

■■■ The circumstance which justifies the granting
of tax exemption to a domestic corporation, while with-
holding it from one organized under the laws of a sister
state is not the fact that one corporation is domestic
and the other foreign. The basis for the distinction
is found in the fact that the domestic charitable cor-
poration performs a function in the state of its in-
corporation which is of direct interest to that state
and its people. It is relieving the state and its people
of burdens which might otherwise be imposed upon
them. Such corporations are peculiarly subject to
legislative and judicial regulation and guidance. Courts
of equity of the domestic state have inherent juris-
diction over charitable trusts. *In re John's Will,* 30 Or.
494, 47 P. 341, 50 P. 226, 36 L. R. A. 242; 10 Am. Jur.,
Charities, § 111. On the other hand, courts of one state
will not see to the administration of funds bequeathed to
a charity of another state. 10 Am. Jur., Charities, § 114.
It requires no citation of authorities to support the
statement that this state bears a heavy burden of re-
sponsibility for the care of the blind, the old and the
needy, and has a vital interest in the proper administra-

tion of public charities and of charitable corporations operating in the state.

"* * * Exemptions to charitable and educational institutions are bottomed on the fact that they render service to the state, and thus relieve the state and its people of a burden which they otherwise would have to assume. * * *" City of Cincinnati v. Commonwealth, 292 Ky. 597, 167 S. W. 2d 709.

It should first be observed that the plaintiff is in a difficult if not embarrassing situation which requires us to affirm the decree of the circuit court which holds that the plaintiff's property is subject to taxation. This we must do, whether the exemption statute be held valid or invalid under the equal protection clause. If the exemption statute should be held unconstitutional, the result would be that both foreign and domestic charitible corporations would be subject to taxation. Obviously a court could not remedy the invalidity by judicially conferring a tax exemption on a class which the legislature refused to exempt. On the other hand, if the exemption statute does not violate the equal protection clause or the provisions of the Oregon Constitution, then the property of the plaintiff, a foreign corporation, would be subject to taxation. A much cited decision is *In re Speed's Estate*, 216 Ill. 23, 74 N. E. 809. The Illinois statute imposed a tax on property situated within the state, passing by will or intestacy, subject to an amendment which provided that gifts to religious or charitable organizations should not be subject to the tax. There was no express provision limiting the exemption to domestic corporations such as appears in the Oregon statute but the Illinois Supreme Court construed the act as not applying to corporations created under the laws of a sister state. In the

Speed case, Illinois land was devised to a charitable corporation of Kentucky. The donee conducted no charitable activities in Illinois. It was held that the devise was subject to inheritance tax. The reason given is significant. We quote:

"* * * It is a universally accepted rule of construction that an act of the General Assembly of a state granting powers, privileges, or immunities to corporations must be held to apply only to corporations created under the authority of that state over which such state has the power of visitation and control, unless the intent that the act shall apply to other than domestic corporations is plainly expressed in the terms of the act. * * *"

Again the court said:

"A clear distinction exists between domestic corporations and corporations organized under the laws of other states. Such corporations fall naturally into their respective classes. Over the one—that which the state has created—the state has certain powers of control; and the other is beyond its jurisdiction. Those of its own creation have been endowed with corporate powers for the purpose of subserving the interests of the state and its people; those which have been given life by the laws of a sister state have entirely different ends and objects to accomplish. The lawmaking power would find many weighty considerations authorizing the classification of foreign and domestic corporations into different classes and justifying the creation of liability on the part of foreign corporations to pay a tax on the right to take property by descent, devise, or bequest under the laws of the state, and at the same time leaving the right of a domestic corporation so to take free of any such exaction."

The case was appealed to the United States Su-

preme Court and was there affirmed. We quote from the opinion of that court:

"* * * The construction of the act by the supreme court we must accept as determining the meaning of the act. In other words, we must regard the act as if the legislature had, in explicit language, excluded from its provisions foreign corporations. If this renders the act void, plaintiff in error, whether its argument be tenable or untenable, seems to be put in the dilemma urged by the defendant in error, and an affirmance of the judgment is required. If the act of May 10, 1901, is invalid, it cannot give exemption from taxation to either domestic or foreign corporations, and plaintiff in error was rightly taxed under the act of June 15, 1895. Plaintiff in error, of course, does not desire to take exemption from domestic corporations. It desires to remove the discriminatory effect of the amendment of May 10, 1901, by including in its bounty foreign corporations. Can this be done? May a court by construction put into a law that which the legislature has left out? There is a difference between burdens and benefits, and it may well be that a law which confers the latter upon some persons, and thereby increases burdens on others, may be declared invalid by the courts. But if the courts may strike down privileges, may they extend favors and make objects of bounty those whom the legislature has excluded? The questions raise important considerations, but we may pass them, because the contention that the act of 1901 is invalid encounters an insuperable obstacle in the power of the state to classify objects of legislation and discrimination between classes. This power is not unconstitutionally exercised by legislation which exempts the religious and educational institutions of the state from an inheritance tax and subjects educational and religious institutions of other states to the tax. Regarding alone the purposes of the institutions, no difference may be perceived between them, but regarding the spheres of their exercise,

··and the benefits derived from their exercise, a difference is conspicuous. It is this benefit that may have constituted the inducement of the legislation.

" * * *

" * * * A Federal court would hesitate indeed to put impediments on this power or declare invalid any classification of persons or corporations that had reasonable regard to the purposes of the state and its legislation. And it cannot be said that if a state exempt property bequeathed for charitable or educational purposes from taxation it is unreasonable or arbitrary to require the charity to be exercised or the education to be bestowed within her borders and for her people, whether exercised through persons or corporations." Board of Education v. Illinois, 203 U. S. 553, 51 L. ed. 314. ··

In *People v. Woman's Home Missionary Soc. of M. E. Church,* supra, it was held that a bequest made by an Illinois testator to a charitable corporation of Ohio was subject to inheritance tax. The Ohio corporation maintained and operated charitable institutions within Illinois. An attempt was made by counsel for the charity to distinguish the case from *In re Speed's Estate,* supra. Answering such contention the court said:

"It is contended by appellant that the fact that it has an office in this state, and owns, maintains, and conducts orphanages and deaconess' homes for charitable purposes within this state, distinguishes this case from the Speed Case, supra. It was expressly stated in People v. Western Seaman's Friend Society, supra, that such facts would make no difference in the decision of such a case. Appellant being organized under another state, its organization and its business are controlled by the laws of that state. It placed itself within the jurisdiction of the state within which it was organized, and it is therefore not a person that has placed it-

self within the jurisdiction of this state. A corporation is not a citizen, within the meaning of section 2 of article 4 and of section 1 of the Fourteenth Amendment of the federal Constitution. The taxing, therefore, of the right of succession to property willed to appellant in this case, is not abridging the privileges or immunities of a citizen of the United States, and, as it has not placed itself within the jurisdiction of this state, such taxation is not denying to any person within the jurisdiction of this state the equal protection of the law.

"* * *

"* * * It is clear that a state is not bound to give its exemption privileges on taxation to foreign corporations, and foreign corporations can claim no such exemption, unless the statute plainly and expressly grants it." People v. Woman's Home Missionary Soc. of M. E. Church, 303 Ill. 418, 135 N. E. 749.

In *City of Cincinnati v. Commonwealth ex rel. Reeves,* 292 Ky. 597, 167 S. W. 2d 709, the court said:

"* * * Presumably, a corporation not organized for pecuniary profit is designed by its incorporators for the attainment or conference upon others of spiritual or cultural benefits, or benefits of a philanthropic nature. But foreign corporations of the all-inclusive category mentioned, are universally held not to be entitled to exemptions from taxation granted by states to similar corporations dispensing their benefits within the state. * * *"

In *Hunter College S. S. C. & R. C. Ass'n. v. City of New York,* 63 N. Y. S. 2d 337, syl. 9, it was held that:

"Only corporations organized and existing under New York Law are entitled to tax exemption in New York, and foreign corporation may not claim such exemption, though its powers and their exercise would entitle it to exemption in jurisdiction of

its incorporation and in New York were it incorporated in that state.''

The case of *In re McIntire's Estate*, 178 Wash. 81, 34 P. 2d 432, has an interesting bearing upon the case at bar. A testator of the state of Washington devised and bequeathed her property to a charitable corporation organized under the laws of Connecticut, but it was provided in the will that the income from the property should be used for the support of needy, aged, and dependent ministers of the Congregational church in the state of Washington. Notwithstanding the provision that the charitable bequest should be administered in the state of Washington, it was held that the gift was subject to an inheritance tax in Washington. Many cases were cited in support. The court said:

"While the will provides that the income from the bequest shall be limited for use within this state, the bequest itself must go out of this state into the state of Connecticut to be used in that state by the foreign corporation to produce the income provided by the will. The statute limits the bequest to use within the state of Washington; hence the bequest is not exempt from an inheritance tax.

" 'A majority of the states that have adjudicated the question adhere to the view that tax exemptions to charitable or educational institutions are confined to domestic corporations. Blackmore on Inheritance Tax, § 257; Gleason and Otis, Inheritance Taxation (2d Ed.) 233.' "

The court quoted from Ross on Inheritance Taxation, § 146, as follows:

"It has been contended that the exemption of charitable institutions from inheritance taxation applies to all such institutions, regardless of their location within or without the state granting the exemption, for, it is argued, the exemption is in

recognition of the beneficent purpose of these institutions, and inasmuch as the purpose is common to them all, wherever located, the exemption should be universal. But the courts have not yielded to this argument. They have held, with unanimity, it is believed, that in the absence of any language plainly indicative of a different intent, the Legislature must be deemed to have made the exception for the benefit of its own institutions only, and that foreign corporations, or institutions without the state, must pay the inheritance tax, although exempt in the state of their domicile, and *although some of their charitable work and enterprise are carried on within the state enforcing payment of the tax."* (Italics ours.)

The decision of the Supreme Court of Washington in *In re Thomas' Estate,* 185 Wash. 113, 53 P. 2d 305, appears to be directly in point. A resident of Washington bequeathed a portion of her estate to the Salvation Army, a California corporation, but for local uses in Washington. The bequest was held subject to inheritance taxation. The court said:

" "* * * The exemption provisions (Rem. Rev. Stat. §§ 11218, 11218-1) of the statute do not exempt bequests to charitable institutions or religious organizations located outside this state from an inheritance tax. The overwhelming weight of authority is, as stated in Alfred University v. Hancock, 69 N. J. Eq. 470, 46 A. 178, 179,

" ' "* * * that, where the legislature grants exemption from such a tax to corporations or organizations, it includes in the exemption only domestic corporations and organizations." * * *

" 'While the will provides that the income from the bequest shall be limited for use within this state, the bequest itself must go out of this state into the state of Connecticut to be used in that state by the foreign corporation to produce the income provided by the will. The statute limits the *bequest to use*

*within the state of Washington*; hence the bequest is not exempt from an inheritance tax.'

"The respondent argues that the McIntire Case is distinguishable from the present case by reason of the fact that, under the terms of the will there involved, the corpus of the trust did not remain in the state of Washington by reason of its being under the dominion of the Connecticut corporation, whereas here the bequest is to be used by, and presumably remain in the control of, the local branch of the California corporation. But this would follow only if the California corporation chose to leave the property here. The decree of distribution sets over to the respondent dominion over the property covered by the bequest, 'as is provided in said paragraph ten of the deceased's will.' Assuming that the final proviso refers to the use of the property in this state, the use would be dependent upon the will of the corporation. We must resolve the question of law involved upon principle—by considering what it would be in the power of the corporation to do rather than what it may be disposed to do. While we may assume that the California corporation would faithfully execute the provisions of the will in the use of the property, yet the state would have no visitorial power enabling it to enforce compliance. True, the corporation is registered in the state and permitted to do business therein, but it is not compelled to remain in the state. The testimony taken at the proceeding shows that the local branch officers of the Salvation Army have but limited discretion as agents of the corporation. The essential control is in the officers at the Salvation Army headquarters in California.

"* * *

"The respondent contends that if Rem. Rev. Stat. § 11218, is to be construed as denying to the respondent, a foreign corporation, registered and authorized to do business in this state, an exemption allowed to domestic corporations, the section is in violation of the equal protection clause of the

Fourteenth Amendment to the Federal Constitution, as well as article 1, section 12 of the State Constitution. We can see no merit in this contention. The exemption is granted as a matter of grace upon consideration of the public benefits to accrue from the use to which the gift is devoted. To insure its proper application, the state may prescribe the character of agency that shall have the management of the gift, as a condition for its exemption. The authorities cited in the McIntire Case sufficiently answer respondent's contention under this head.''

A more detailed consideration of the organization of the Methodist Church and of the control exercised by its various corporate bodies over the affairs of the plaintiff corporation leads to the conclusion that there is a reasonable basis for the classification made by the statute between domestic and foreign charitable corporations and that the plaintiff corporation will not be denied the equal protection of the laws if its personal property is subjected to ad valorem taxation. There has been received in evidence the "Discipline of The Methodist Church" which contains the constitution and laws of the church, covering its various bodies and subsidiaries. From the "Discipline" and undisputed testimony we find that the plaintiff corporation maintains two bank accounts; the one represents an operating fund, but the other, into which all surplus is placed, is in the exclusive control of the national office which can make withdrawals or deposits at will. The General Conference is the lawmaking body of the church, having power to "initiate and to direct all connectional enterprises of the church, such as publishing * * *''. Any surplus from the operation of the Portland store goes to the home corporation and then is turned over to the Board of Pensions. Such

surplus is not "subject to the desires of the Ohio corporation", the plaintiff here, but is subject to the control of the General Conference. The Board of Pensions is "another corporation of the Methodist Church". Subject to the control of the General Conference, the Board of Pensions makes an appropriation of funds to the various annual conferences for the benefit of conference claimants. The Discipline provides that retired ministers, the widows of ministers, during their widowhood, and dependent children of deceased ministers are conference claimants. The plaintiff is one of four corporations which together constitute the Methodist Publishing House which is under the control and direction of a Board of Publication, the latter being made up of representatives of the various jurisdictional conferences of which there are six in the United States. The manager of the Portland store is solely responsible to the "Publishing Agents" who are in turn selected by the members of the Board of Publication. The members of the Board of Publication are also the members of the plaintiff corporation. The members of the Board of Pensions constitute also the members of three corporations, one of which is "The Board of Pensions of the Methodist Church, Incorporated in Illinois". The latter corporation is responsible for the administration of funds for the support of conference claimants in four jurisdictions, one of which is the "Western Jurisdiction" which includes the ten western states, Alaska and the Hawaiian Islands. In all matters not specifically covered by General Conference legislation, The Board of Pensions has authority to adopt rules and policies for the administration of the support of conference claimants. The Board of Publication members determine the amount of money which shall be dis-

tributed through the respective Annual Conferences of the church to conference claimants. Concerning the four corporations which comprise the Methodist Publishing House, the Discipline provides:

> "The net produce of the several corporations, after setting up proper reserves for the efficient operation of the business and necessary expansion, shall be paid into a single fund and distributed annually by the Board of Publication to the several Annual Conferences for the persons who are and shall be conference claimants."

The proceeds from the plaintiff corporation constitute but a small portion of the funds which are appropriated for the payment of conference claimants.

From the evidence it clearly appears that there is no authority vested in any person or corporation located in Oregon to determine the disposition of the net proceeds from the plaintiff corporation. The manager of the plaintiff corporation testified that the sums over and above the operating fund immediately become available for the home office "to do with as it pleases". The Ohio corporation which operates the Portland store is without authority to determine the disposition of its surplus funds. It is undoubtedly true that some of the surplus funds of the plaintiff corporation, together with other larger funds, ultimately go to the Annual Conference and through it to conference claimants in Oregon, but so far as any contract or rule of law is concerned, it is apparent that all of the funds derived from the plaintiff corporation could be devoted to charity wholly outside of the state of Oregon.

The facts concerning the disposition and control of the funds of the plaintiff corporation present a

reasonable basis for the classification which has been made by statute. We find no violation of the equal protection clause of the federal constitution. The above considerations also dispose of the plaintiff's contention that the statute is in violation of the cited provisions of the Oregon constitution requiring uniformity.

"* * *As above indicated, the Constitution as amended places no restraint upon the power of the legislature in the matter of taxation which was not already enforced upon it by the 14th Amendment to the federal Constitution, with this qualification, if it be a qualification, that among the members or objects included in a class selected by the legislature, inherent uniformity as well as territorial uniformity is required." Standard Lbr. Co. v. Pierce et al., 112 Or. 314, 228 P. 812; and see Corporation of Sisters of Mercy v. Lane County et al., 123 Or. 144, 261 P. 694.

The plaintiff contends that:

"By administrative construction, the exemption of Section 110-201, O. C. L. A., has been applied to Plaintiff for more than twenty-five years, and therefore Defendants are estopped from now changing such construction of the statute."

In support of the contention that the failure of the taxing authorities to impose a property tax upon the plaintiff's property in the past constitutes an estoppel, the plaintiff cites *Portland v. Welch et al.,* 126 Or. 293, 269 P. 868. That case goes no further than to say that the contemporaneous construction placed upon the act by the state officers is very persuasive as to the meaning of the statute. The question was one of statutory construction and the decision was not based upon estoppel. The following authorities indicate that the state is not estopped from levying a tax upon property

by the fact that it had omitted to assess such property in previous years: *Hibernian Benevolent Society v. Kelly,* 28 Or. 173, 42 P. 3, 30 L. R. A. 167; *State v. Swensk et al.,* 161 Or. 281, 89 P. 2d 587; *Oregon v. Portland Gen. Elec. Co.,* 52 Or. 502, 95 P. 722, 98 P. 160; 1 Cooley, Taxation, 4th ed. § 61, p. 159. The claim of estoppel by reason of failure to tax in previous years is also met by the provisions of O. C. L. A., § 110-201 as amended by chapter 296, Oregon Laws 1945, which imposed new duties upon assessors to list and evaluate all real property exempt from taxation and which required certain corporations claiming exemptions to file verified lists of property claimed to be exempt and the purpose for which used.

The defendants invite us to render a declaratory judgment to the effect that the plaintiff is not a charitable corporation. In view of our conclusion that the statutory exemptions do not extend to foreign corporations, we find it unnecessary and improper to make any declaration as to whether or not the plaintiff would be entitled to exemption as a charitable corporation if it were incorporated under the laws of Oregon. Since the plaintiff is not so incorporated, we hold that there is no justiciable controversy as to the taxability of such corporations.

"In action for declaratory relief the court must first consider whether a justiciable controversy exists and, if so, whether a declaration of rights should, as a matter of discretion, be made." Rahoutis v. Unemployment Commission, 171 Or. 93, 136 P. 2d 426, syl. 2.

"* * * The courts have many times held that a declaration will not be pronounced in suits where the rights of the plaintiff are contingent upon the happening of some event which can not be predicted

and which may never occur. * * *'' Drake et al. v. City of Portland et al., 172 Or. 558, 143 P. 2d 213. And see 62 Harv. L. Rev. 794, (March, 1949.)·

For all we know, the Book Concern may never seek incorporation in this state, and if it does, it will no longer be the corporation which is the plaintiff here. It will be time enough to determine the difficult and complicated questions concerning the tax status of domestic corporations which are engaged in enterprises in competition with private business, but whose profits are solely devoted to charitable purposes, when the issue is squarely presented by such a corporation.

Insofar as the decree of the circuit court holds that the plaintiff is not entitled to tax exemption under the provisions of O. C. L. A., § 110-201 as amended, it is affirmed. Insofar as the decree of the circuit court holds that the plaintiff ''is a charitable corporation and the operation of its book store in Portland, Oregon, and the application of the income therefrom constitutes a charitable activity'', it is reversed solely by reason of the fact that no justiciable controversy exists as to that issue.