SCHOOL DISTRICT NO. 1,
MULTNOMAH COUNTY, OREGON et al,
*Respondents—Cross-Appellants,*

*v.*

TEACHERS' RETIREMENT FUND ASSOCIATION
OF SCHOOL DISTRICT NO. ONE,
MULTNOMAH COUNTY, OREGON et al,
*Appellants—Cross-Respondents,*
and
PUBLIC EMPLOYES' RETIREMENT
BOARD et al, *Respondents.*

(No. 384-517, CA 5734)

567 P2d 1080

George K. Meier, III, Portland, argued the cause for appellants—cross-respondents. With him on the briefs were Gerard K. Drummond, J. Roger Hamilton, and Rives, Bonyhadi & Drummond, Portland.

Mark C. McClanahan, Portland, argued the cause for respondents—cross-appellants. With him on the brief were Donald A. Burns and Miller, Anderson, Nash, Yerke, & Wiener, Portland.

No appearance for respondent The Public Employes' Retirement Board.

Before Thornton, P. J., and Lee and Johnson, Judges.

JOHNSON, J.

JOHNSON, J.

This is an appeal from a declaratory judgment adjudicating certain disputes between the parties concerning a prospective plan of merger for the Teachers' Retirement Fund Association (TRFA) and the Public Employes' Retirement System (PERS). We reverse and remand for the reasons that follow.

Most public employes including school teachers are by law members of PERS. An exception is teachers employed by Portland School District No. 1 who are members of TRFA.

Under PERS both employers and employes are required to make contributions. The system has two distinct components. First, there is the annuity which is derived from the employe's contributions. The funds are invested and upon retirement the retiree is given an annuity based upon life expectancy and the accumulated contributions and earnings in the retiree's annuity account at the time of retirement. Secondly, the retiree is paid a pension, the amount of which is fixed by law. The funds for paying the pension are derived from the employer's contributions. The pension is funded in the sense that the anticipated employer's contributions together with the earnings will equal anticipated pension payments. TRFA was created in 1911 and applies only to teachers employed by the Portland School District. That system, like PERS, has annuity and pension components but differs from PERS in two related particulars. Because of investment and actuarial factors TRFA is capable of paying its retirement members a larger annuity than PERS. As a consequence, TRFA retirees under Oregon Laws 1959, ch 613,[1] do not receive the full amount credited to their annuity account, but receive as an annuity payment equal to that which they would receive if they were members of PERS. As a result TRFA has excess funds which have been transferred to an unassigned surplus account. Secondly, TRFA pen-

[1]Now ORS 239.203(1), 239.227(2), 237.147.

sions are not funded by the school district. Instead the district pays the pension amounts fixed by the legislature from its current revenues.

The parties have been negotiating since 1969 to merge TRFA and PERS. The parties agree that in order to merge TRFA and PERS, the school district would have to fund the pension program. The principal roadblock to a merger concerns the disposition of the unassigned surplus. The school district contends that in any merger the unassigned surplus should be used to offset the school district's obligation to fund the pension program. TRFA contends the funds belong to its members.

■ In 1969 the legislature enacted Oregon Laws 1969, ch 708, which made several amendments to the TRFA pension program. The principal purpose of these amendments was, to the degree possible, to make TRFA and PERS comparable. Section 11 of the original bill, Senate Bill 548, further provided that newly appointed teachers were to be made members of PERS, thus making TRFA a "last man's club" that would eventually terminate by attrition. The school district and TRFA opposed the original Section 11. The school district with TRFA's acquiescence proposed amendments which were adopted and enacted as Section 11 of chapter 708:[2]

> "Section 11. (1) The Legislative Assembly finds that it is in the public interest that any retirement system established by ORS chapter 239 be integrated into the retirement system established by ORS chapter 237 in an orderly way as soon as practicable.

> "(2) In order to encourage such integration the Public Employes' Retirement Board and the school board in any district in which a retirement system has been established by ORS chapter 239 shall cooperate with the board of trustees of the association organized thereunder in working out a fair, equitable and feasible plan for the integration of the system established by ORS chapter 239 into the system established by ORS chapter 237.

---

[2] Senate Education Committee minutes, May 14, 1969.

"(3) The Public Employes' Retirement Board, the district school board and the board of trustees of the association jointly may cause such financial and actuarial investigation of the proposed integration to be made as they may deem appropriate and the cost thereof shall be borne one-half by the Public Employes' Retirement Board and the other one-half equally by the school district and the association.

"(4) The Public Employes' Retirement Board and the district school board shall report to the Joint Ways and Means Committee not later than the opening of the 1971 session of the Legislative Assembly a plan of integration agreed upon by the Public Employes' Retirement Board, by the district school board and by the board of trustees and membership of the association and any legislation necessary to implement such plan of integration."

The school district's complaint rests on the contention that the above quoted Section 11 mandates that the parties prepare an integration plan that is "fair, equitable and feasible." The trial court concurred, concluding that the 1971 time limit is severable and that the plan must provide for an "orderly integration as soon as practicable." The trial court further decreed that a fair, equitable and feasible plan must include a transfer by TRFA of all its assets to PERS, and subject to certain adjustments, the unassigned surplus was to be credited to the school district's pension funding obligation.

■ The trial court's conclusion that the 1971 time limit was severable does not square with the express language or the legislative history of Section 11. The clear import of subsection (4) is that any plan devised by the parties "was to be submitted no later than the opening of the 1971 session * * *" so that "any legislation necessary to implement such a plan of integration" could be enacted. The purpose of Section 11 as proposed to the legislature by the school district was to be a substitute for enactment of a "last man's club" provision. In 1971 TRFA and the school district reported to the legislature that they had not reached agreement on a plan, but the negotiations were con-

tinuing and a "realistic possibility" existed such negotiations would be successful. The legislature nevertheless resurrected the original 1969 proposal and made TRFA a last man's club effective July 1, 1973. Oregon Laws 1971, ch 700, now ORS 239.100. The only rational conclusion is that the legislature determined that Section 11 had expired. Section 11 has never been codified.

■ Even if the time limit is severable, Section 11 does not appear to mandate anything that is justiciable. The language is hortatory "to encourage" a cooperative effort by the parties in "working out" an integration plan. At most there is a duty to cooperate. However, it is questionable under the statutory language whether that duty even extends beyond the two public agencies, the Public Employes' Retirement Board (PERB) and the school district. Subsection (2) says that PERB and the school board "shall cooperate with the board of trustees of the association" but does not say there is any corresponding duty on the part of the TRFA board which is a private non-profit corporation.

■■ Assuming a duty to cooperate exists that duty does not require any of the parties to accede to agreement. In oral argument the school district analogized to the labor law concept of a duty to bargain in good faith. The district in effect contends that the TRFA trustees' bargaining position concerning the unassigned surplus is so unfair, unjust and unequitable that it constitutes bargaining in bad faith. We disagree. We need not comment on the persuasiveness of TRFA's position. The trustees' position certainly is not frivolous to the extent that it constitutes bad faith bargaining. If for no other reason their position is justified by the fact that the members in all likelihood would not agree to any other position. In any event, good faith bargaining does not require concession and it is not in the power of the courts to compel concession or otherwise sit in judgment upon the substantive terms

of negotiations. *See Porter Co. v. NLRB,* 397 US 99, 90 S Ct 821, 25 L Ed 2d 146 (1970); *Labor Board v. American Ins. Co.,* 343 US 395, 72 S Ct 824, 96 L Ed 1027 (1952).

Section 11 makes it clear that the legislature considered successful negotiation of an integration plan to be subject to several contingencies. The plan had to be agreed upon not only by PERB, the school board and the TRFA trustees, but also by TRFA members. The compelling aspect of Section 11 is not contained in the language of the statute but in circumstantial realities. The legislature was probably saying to the parties: "You have two years to work out a plan. If you can't, we will compel integration by making TRFA a 'last man's club.' " In any event we are confronted with a statute that encouraged the parties to negotiate a plan. The plan must be approved by TRFA members. Then the legislature may enact enabling legislation and in that process may adjust the plan as it deems fit. A justiciable controversy cannot be cut from such contingent cloth. *Cummings Constr. v. School Dist. No. 9,* 242 Or 106, 408 P2d 80 (1965); *Hale v. Fireman's Fund Ins. Co.,* 209 Or 99, 302 P2d 1010 (1956); *Methodist Book Concern v. St. Tax Com'n,* 186 Or 585, 208 P2d 319 (1949); *Drake v. City of Portland,* 172 Or 558, 143 P2d 213 (1943).

The school district suggested in oral argument that even though there may be no justiciable controversy there is sufficient public interest to warrant the court taking jurisdiction to compel the terms of an agreement. This argument was rejected by the Oregon Supreme Court in *Cummings Constr. v. School Dist. No. 9,* supra. The court quoted a Virginia decision as a statement of its reason for the rule:

> " '* * * [T]he courts are not constituted, and the declaratory judgment statute was not intended to vest them with authority, to render advisory opinions, to decide moot questions or to answer inquiries which are merely speculative. [City of Fairfax v. Shanklin] 205 Va 227, 229, 135 SE2d 773, 775.' " 242 Or at 112.

[ 753 ]

In view of our interpretation of Section 11, it is doubtful that any justiciable issue remains. The briefs and arguments have cast the case almost exclusively in terms of what is just, equitable and feasible under an integration plan negotiated under chapter 708. The trial court's decree deals exclusively with this aspect of the case. However, there is some indication in the pleadings that a justiciable controversy may arise out of considerations wholly independent of chapter 708. The school district for example alleges that TRFA's accounting practices with respect to the unassigned surplus and certain dividends paid to TRFA members were illegal. If the school district can establish some right, title and interest or that it has standing other than by virtue of its claim under chapter 708, then the district may be entitled to an adjudication of these issues. The trial court also declined to rule on TRFA's counterclaim. Therefore the case is remanded for such further proceedings as may be necessary.

Reversed and remanded.

**THORNTON, P. J.,** concurring.

I agree with the majority opinion except the treatment of the issue of justiciability.

As I understand the majority opinion, it holds that § 11 of chapter 708, Oregon Laws 1969, does not mandate merger and therefore the question of whether § 11 mandates merger is nonjusticiable because "[a] justiciable controversy cannot be cut from such contingent cloth."

First, it seems to me that justiciability is a threshold inquiry and we cannot both interpret the statute and term the interpretation of the statute "nonjusticiable."

Second, even assuming that because of our view of the merger question, other questions that follow from a determination that merger is mandated are no longer "justiciable," I think the nature of that nonjus-

ticiability must be identified. The question of justiciability does not arise apart from a question involving a particular kind of failure of justiciability.

I would hold that questions raised by the parties about the nature of integration are hypothetical as a result of our holding that integration is not mandated.