Argued March 15; modified April 18, 1939

# STATE *v.* SWENSK ET AL.

(89 P. (2d) 587)

In Banc.

*Lyndon L. Myers*, of Portland (I. H. Van Winkle, Attorney General, and McCamant, Thompson, King & Wood, of Portland, on the brief), for appellant.

*T. Walter Gillard*, of Portland (William P. Lord, of Portland, on the brief), for Uno Swensk, trustee.

*Maurice W. Seitz*, of Portland, for Northwest Ice & Cold Storage Co.

BELT, J. This is a suit to foreclose an alleged statutory lien (subdivision (b) of § 40-518, Oregon Code 1930) to enforce payment of poundage fees for fish received or packed by a cannery located at Warrenton, Oregon.

The first cause of suit pertains to poundage fees accruing to the State of Oregon during the license year ending March 31, 1931, while the cannery was operated by the Columbia River Fishermen's Cooperative Packers. It is conceded that there is an unpaid balance of $998.94, together with interest thereon, due as poundage fees on the fish handled by the cannery between the 3d day of March, 1930 and the 5th day of November, 1930. The operating company filed a bond with the New Amsterdam Casualty Company as surety in the penal sum of $1,000 to secure payment of such poundage fees.

The second cause of suit involves poundage fees accruing during the license year ending March 31, 1932, while the cannery was being operated by Columbia River Fishermen's Cooperative Packers. On the fish handled by the cannery between April 18, 1931, and September 25, 1931, there is due as poundage fees a balance of $255.55, together with interest thereon. To secure payment of the fees during such license year, the operating company filed a bond in the penal sum of $2,500 with Massachusetts Bonding and Insurance Company as surety.

The third cause of suit involves poundage fees accruing during the license year ending March 31, 1935, while the cannery was being operated by the Columbia River Fisheries, Inc. All the fish on which poundage fees accrued during the license year were handled by the cannery between June 1, 1934, and August 25, 1934. Poundage fees amounted to $1,285.89, together with interest thereon, less the sum of $15 paid May 22, 1935, and $10 paid June 24, 1935. To secure payment of fees accruing during the license year above mentioned, the operating company filed a

bond with Standard Accident and Insurance Company as surety in the penal sum of $1,000.

It is well, at this juncture, to state that on the 12th day of January, 1931, the defendant Edwards Ice Machine & Supply Company, a corporation, sold, under the terms of a conditional sales contract, certain ice machinery and refrigeration equipment to the Columbia River Fishermen's Cooperative Packers, which machinery and equipment was installed and used subsequent to the license year ending March 31, 1931, in the Packers' plant at Warrenton, Oregon. The conditional sales contract was duly recorded in Clatsop county on April 4, 1931. After this machinery and equipment had been installed and used in the plant at Warrenton, the respondent Northwestern Ice & Cold Storage Co., a corporation, acquired by assignment all the right, title and interest of Edwards Company by virtue of the conditional sales contract. Upon failure of Columbia River Fishermen's Cooperative Packers to pay the amount due on the purchase price under the terms of the conditional sales contract, the respondent cold storage company, on May 15, 1935, repossessed the machinery and equipment and installed the same in its own plant at Astoria, Oregon. It is conceded that at the time this suit was commenced in October, 1935, Uno Swensk, as trustee, owned all the property involved herein excepting that belonging to Northwestern Ice & Cold Storage Co.

The trial court entered a decree dismissing the suit as to Northwestern Ice & Cold Storage Co., having held that none of its property was subject to the lien asserted by the State. It was also decreed that the plaintiff had a first lien on the property of Uno Swensk, as trustee, covering poundage fees due as alleged in

the second and third causes of suit and such lien was foreclosed, but the court denied the claim of lien as to the first cause of suit.

The State of Oregon on appeal concedes that, since the machinery and equipment of the respondent cold storage company was not used in the cannery to receive or can fish during the license year ending March 31, 1931, the trial court was right in not impressing a lien upon its property covering poundage fees for such year, but contends that the court erred in not foreclosing its lien for the amount due under its second and third causes of suit. The State also appeals from that part of the decree which failed to foreclose its lien on the property of Uno Swensk, as trustee, covering poundage fees as alleged in the first cause of suit.

Uno Swensk, as trustee, cross appeals from that part of the decree foreclosing liens for amounts due under the second and third causes of suit.

The decision hinges primarily upon whether subdivision (b) of § 40-518, Oregon Code 1930, prior to its amendment (subdivision (b) of § 102, Ch. 180, Laws of Oregon 1931) created an enforceable lien. The subdivision prior to amendment in 1931 provided as follows:

"(b) The poundage fee herein required shall constitute a first lien upon the cannery, packing plant, scow, boat and its equipment used in the canning, receiving or transporting of the said fish."

The trial court, as shown by its memorandum opinion, concluded that the above statutory provision was too indefinite and uncertain to be enforceable since the act of which it was a part (1) failed to specify in whose name the suit for foreclosure of the lien should be brought and (2) failed to provide any method of

foreclosure. It is urged by respondent and cross-appellant that the legislature recognized such defects in the act, as shown by the 1931 amendment which added to such subdivision the following provision:

"and such lien may be foreclosed by the fish commission in the name of the state of Oregon by a suit in equity in the circuit court of the county in which the property upon which a lien is hereby given is situated, and if situated in two or more counties the court first acquiring jurisdiction of a part of said property shall have jurisdiction of all the property described in such foreclosure suit."

While the subdivision in question, prior to the 1931 amendment, is not free from doubt concerning the objections above mentioned, we think, when considered in the light of other provisions of the commercial fisheries code of which it is a part, it is not reasonably susceptible of the construction given to it by the trial court. Relative to the question as to in whose name the foreclosure suit should be brought, we are of the opinion that the State of Oregon is the proper party to prosecute the suit.

A complete fisheries code was enacted by chapter 105 of the Laws of Oregon, 1921, and subdivision (b) of § 40-518, Oregon Code 1930, is a part of the original act. In this act a fish commission was created as an agency of the state to provide, among other things, for the better protection, preservation and propagation of salmon and other anadromous fishes. It was further provided therein for the collection by the master fish warden of additional poundage fees from every person or corporation operating as a "canner, receiver, buyer or wholesaler" for salmon so received or purchased. The poundage fee was required to be paid to the master fish warden and, under the provisions of § 40-509, Ore-

gon Code 1930, all money so collected "shall be deposited by the master fish warden with the state treasurer, for the credit of the hatchery fund of the district from which the collection has been made." § 40-105, Oregon Code 1930, refers to the fees thus collected as "funds of the State of Oregon" and provides for the expenditure of the same.

■ It is true that, prior to the 1931 amendment, the act provided no method of foreclosure of the lien, but we think this objection is not fatal in view of § 6-501, Oregon Code 1930, the general statutory provision as follows:

"A lien upon real or personal property, other than that of a judgment or decree, whether created by mortgage or otherwise, shall be foreclosed, and the property adjudged to be sold to satisfy the debt secured thereby by a suit.   *   *   *"

Furthermore, § 6-108, Oregon Code 1930, provides the venue for suits in equity and states that the suit shall be brought in the county in which the property or some part thereof is situated.

It is argued that the legislature in 1931 must have considered that amendment necessary to make the lien effective; otherwise it would not have been enacted. Unquestionably there was some doubt whether the lien was enforceable, prior to the amendment in 1931, but we think the amendment was made for the purpose of clarification rather than to cure a fatal defect in the statute.

We conclude, after a consideration of the act in its entirety, that a lien was created for the benefit of the State and that authority was vested in the State, prior to the 1931 amendment, to enforce the lien to collect poundage fees due.

■ Having concluded that § 40-518, Oregon Code 1930, created an enforceable lien in favor of the State on any cannery or packing plant used in "canning, receiving or transporting of the said fish", we next inquire whether the facts as disclosed by the record show a substantial compliance with the statute. Relative to this phase of the case, respondent contends it is not established by the greater weight of the evidence that the machinery and equipment upon which a lien is claimed was used in connection with the particular fish upon which poundage fees are due. We cannot agree with this contention. There is no dispute concerning the amount of poundage fees due and it is not denied that the machinery and equipment owned by Northwestern Ice & Cold Storage Co. was installed and used in the cannery during the license years involved in the second and third causes of suit. Such machinery and equipment were undoubtedly an integral part of the cannery plant. We do not think it was incumbent upon the State to show that any particular machine of the plant was used in canning or packing the fish upon which poundage fees are claimed. It is sufficient that the machinery or equipment was a part of the plant engaged in cannery operations and that the fish upon which poundage fees are claimed were packed in such plant. The lien created by statute is given on the cannery as a whole and not on any particular part thereof.

Mr. H. S. Smith, who was auditor of the fish commission, testified that he visited this cannery at least once each month during the time involved and it was engaged in canning fish. In response to the question: "Then you will be unable to state to what extent the cannery was actually used in the handling of this fish?" Mr. Smith answered: "The cannery, plant and equip-

ment handled all of it.'' The poundage tax is based on the daily reports of the licensee to the fish commission showing the kind and amount of fish received or purchased. We think it reasonable to infer that, when such licensee is engaged in the operation of a cannery, the machinery and equipment of the plant is used in connection with the packing of such fish. If so used, the State has a lien on the cannery and its equipment for the poundage fees accruing on the fish reported.

It is the use of the machinery and equipment, and not its ownership, upon which the lien is based. If the statute were given any other construction, a licensee engaged in the operation of a cannery could practically nullify the act creating a lien to enforce payment of poundage fees by using machinery and equipment owned by some third person. When the Northwestern Ice & Cold Storage Co. acquired this ice machinery and refrigeration plant it was installed and used in a cannery operated under a license issued by the state fish commission. The owner was bound to know that its machinery and equipment were being used in such cannery operation and that a lien would attach to such property to insure payment of poundage fees due the State. The statute was in existence at the time respondent acquired its title to the property in question and it is bound thereby. In *Motor Dealers' Credit Corporation v. Heise*, 166 S. C. 389, 164 S. E. 900, the Chero-Cola Bottling Company purchased an automobile to be used in its business. A note and mortgage were given to secure payment of the purchase price and on the same day were assigned to the plaintiff. The mortgage was duly recorded on the day of its execution. A statute then in existence gave the State ''a first preferred tax lien'' for gasoline taxes upon property ''used or to be

used" in the dealer's business. In holding that the gasoline tax lien was prior to the mortgage, the court said:

"When the mortgage was executed, the holder thereof had notice by the terms of the act that if the automobile were being used in the business of the mortgagor and if the mortgagor failed to pay its license taxes, then the lien of the license tax would rank in priority over the mortgage."

To the same effect see *Hodge v. Muscatine County*, 196 U. S. 276, 49 L. Ed. 477, 25 S. Ct. 237. Applying the principles of law above announced, we fail to see in the instant case where there could be any impairment of the obligations of a contract or the taking of property without due process.

We are mindful that the respondent had no constructive notice of the amount or extent of the lien but it was, nevertheless, its duty to make reasonable inquiry of the fish commission as to the amount of poundage fees due. The president and general manager of the company admitted that no investigation was made "to find out * * * if there were any accrued poundage fees that might be a lien on that property." Under this state of the record, the respondent can hardly be considered an innocent purchaser.

██ We see no merit in the contention that plaintiff had an adequate remedy at law and hence equity had no jurisdiction over the subject matter of this suit. The statement in brief of respondent that "the bond in each instance is ample to cover the poundage fees claimed" is inaccurate so far as the first and third causes of suit are concerned. Furthermore, equity is the only forum for the foreclosure of a statutory lien: *Cordrey v. Steamship "Bee"*, 102 Or. 636, 201 P. 202, 20 A. L. R. 1079.

It is urged that the State is not the real party in interest and that this suit is being prosecuted for the benefit of the bonding companies. It appears from the record that the State has never assigned its claim of liens. The poundage fees are funds of the State of Oregon. The statute (§ 1-301, Oregon Code 1930) requiring a suit to be brought in the name of the real party in interest was enacted for the benefit of the party defendant and to protect him from being again harassed for the same cause: *Sturgis v. Baker*, 43 Or. 236, 72 P. 744; *Schleff v. Purdy*, 107 Or. 71, 214 P. 137; *Lentz v. Oregon Growers' Co-operative Ass'n.*, 116 Or. 683, 242 P. 826. In the instant case the defendants can in no way be injured or prejudiced by reason of the State's prosecution of the suit. If the State had sued the bonding companies for failure of its principals to pay the poundage fees and recovery was had, the bonding companies would be subrogated to the rights of the State.

It is argued that, by reason of the plaintiff's having exacted the bonds, there was a waiver of the liens. A sufficient answer is that there is no authority vested in the fish commission, as an agency of the State, to waive the lien created by subdivision (b) § 40-518, Oregon Code 1930. Furthermore, whether the taking of additional security constitutes a waiver of lien depends largely upon the intention to be gathered from the relationship of the parties, the nature of the security, and the other circumstances of the case: 17 R. C. L. 608, 37 C. J. 335. Assuming that the fish commission had power to waive the lien, there is nothing to indicate its intention so to do. The State had a lien on property having a valuation of approximately $30,000. Can it be that, by exacting bonds, which in two of the three

years involved are insufficient to pay poundage fees and interest thereon, it indicated its intention to waive the liens? Considering the nature of such additional security required by the State upon application of the licensees to operate, we think it is clearly established that the liens were not waived.

Respondent finally asserts that, by reason of the delay in bringing the suit and the fact that the respondent has expended a considerable sum of money in removing its property from the cannery at Warrenton, the State ought to be estopped from claiming a lien on its property. In our opinion, there is no basis for a claim of estoppel in pais against the State. The State has done nothing to mislead the respondent to its prejudice. The State in collecting the poundage fees due was acting in a governmental capacity. Under such circumstances, estoppel will not arise by reason of laches of its agency, the fish commission: *Oregon v. Portland Gen. Elec. Co.*, 52 Or. 502, 95 P. 722, 98 P. 160; *Rohde v. State Industrial Accident Commission*, 108 Or. 426, 217 P. 627. Any damage suffered by respondent has been due to its own failure to exercise reasonable diligence in ascertaining the facts about the nonpayment of the poundage fees.

It follows from what has been said that the court erred in dismissing the suit as to the Northwestern Ice & Cold Storage Co. and it also erred in refusing to foreclose a lien on the cannery and equipment used by Uno Swensk for the poundage fees involved in the first cause of suit. The State is entitled to a decree of foreclosure against the respondent Northwestern Ice & Cold Storage Co. for the poundage fees involved in the second and third causes of suit and also against Uno

Swensk, as trustee, for the poundage fees involved in all three causes of suit.

With the modifications thus made, the decree of the lower court is affirmed. The cause is remanded with directions to enter a decree in accordance with this opinion. Neither party will recover costs or disbursements.