**TERRITORY OF ALASKA, Appellant,**

v.

**CRAIG ENTERPRISES, INC., Appellee.**

No. 3.

Supreme Court of Alaska.

Sept. 9, 1960.

---

Ralph E. Moody, Atty. Gen. of Alaska, Dickerson Regan, Juneau, for appellant.

D. A. Burr and G. F. Boney, Anchorage, for appellee.

Before NESBETT, Chief Justice, and DIMOND and AREND, Associate Justices.

DIMOND, Associate Justice.

In this appeal there is involved the validity of that portion of the Alaska Employment Security Act which gives the State a lien for unpaid employment security contributions, not only on the employer's property, but also upon "all the real and personal property used with the permission of the owner thereof in prosecuting the business of the employer." [1] The district court found this quoted portion of the statute unconstitutional for failure to accord with principles of due process of law, and entered a summary judgment for the appellee. The Territory (now State) of Alaska has appealed.

The facts are not in dispute. In June 1952, Craig leased certain real property to

[1] Section 514, Art. V, Ch. 5, S.L.A. (Ex.Sess.) 1955 [§ 51–5–148, A.C.L.A.1957 Cum. Supp.].

Amusement Enterprises Corporation to be used by the latter as a restaurant. The written lease provided for rental equal to 6½% of gross revenue derived by the lessee from use of the premises each month, or a minimum amount of $1,000 a month.

In 1955 and 1956, while the lease was in effect, Amusement incurred liability for employment security taxes. On August 22, 1957, the Alaska Employment Security Commission filed for record its statement and claim of lien on the leased premises for such unpaid taxes, together with penalties and interest, in the total sum of $717.83. On August 31, 1957, Amusement abandoned the premises and surrendered them to Craig.

Craig commenced this action in the district court on October 21, 1958, asking for a judgment declaring the state's lien to be null and void. Both parties filed motions for summary judgment, and the case was submitted to the court on stipulated facts. The court below filed its written opinion on April 17, 1959, holding that the statute under which the state's lien was claimed was unconstitutional as contravening the due process clauses of the Fourteenth Amendment to the Federal Constitution and of Article I, Section 7 of the Alaska Constitution.

There are two questions to be decided: (1) Whether the statute involved here is a valid act of the Alaska Legislature, and (2) if it is, whether it may be validly applied in the circumstances of this case, where the statute was enacted after the execution of the lease between Craig and its lessee.

1. *The Validity of the Statute.*

Craig's argument, succinctly stated, is this: that the act has the effect of taking one person's property to pay the taxes of another; that this is confiscation condemned by those provisions of the federal and state constitutions which provide that

no person shall be deprived of his property without due process of law.

In its opinion sustaining Craig's argument, the district court relied principally upon decisions by the Supreme Courts of Arizona and Washington. Both states had statutes which provided that unemployment compensation taxes should constitute a prior lien, not only against the interests of any employer, but also, against the interest of all others, in the real estate, plant, works, equipment and buildings, improved, operated and constructed by any such employer.

In the Arizona case[2] there was involved the priority of an employment security tax lien on real property owned by a delinquent employer, as against the prior recorded realty mortgage of a third person. The Supreme Court of Arizona held this statute to be unconstitutional as lacking in due process to the extent that it created a lien prior to all other liens of innocent third parties who had acquired an interest in the employer's property in good faith and without notice.

If this factual situation existed under the Alaska law, it would be unnecessary to reach the constitutional question. The Alaska act provides that in order for the Commission to avail itself of the lien it shall file notice thereof in the proper recording office and that—

"* * * such filing shall constitute constructive notice of said lien against the property described therein to creditors of the owner, and to *subsequent purchasers and encumbrancers.* * * *"* (Emphasis added).

This language means that a recorded mortgage lien would not be subordinate to the unrecorded lien of the state for unpaid employment security contributions.[3] But that question is not presented in this case. Here the question is as to the validity of the state's lien on property used by an em-

2. Myerson v. Sakrison, 1952, 73 Ariz. 308,

3. Cf. Secretary of the Treasury of the United States of America v. Alaska Plywood Corporation, D.C.D.Alaska 1958, 167 F.Supp. 857.

ployer in the prosecution of his business with the property owner's permission. This question was not passed upon in the Arizona case, and hence that decision is inapposite.

In the Washington case [4] the question presented involved the lien of an employment security tax upon the machinery and equipment leased by a third person to an employer and used in the operation of the latter's business. The court found the statute violative of due process requirements as arbitrarily imposing a lien on property of one not liable for a tax, and thus in effect requiring a third party to pay taxes owed by another. To that extent the law was declared unconstitutional. Unlike the Arizona case, the Washington decision is pertinent and is authority in support of the decision by the court below.

On the other hand, there are decisions which lend support to the state's position that the act involved here is valid in all respects.

Louisiana had a statute which gave a lien to persons who furnished labor and materials in connection with the drilling of oil. A claim of lien was asserted against a drilling rig owned by a third person who was not engaged in the drilling operations out of which the lien claim arose. The Louisiana Supreme Court sustained the validity of the statute, holding that it did not deprive the owner of the drilling rig of his property without due process of law. [5]

In Oregon a statute provided that a poundage fee, with respect to fish received or packed by canneries, constituted a first lien upon the cannery, packing plant, scow, boat and its equipment used in the canning, receiving or transporting of fish. The state assessed its lien against certain ice machinery and refrigeration equipment which had been sold to the taxpayer under a duly recorded conditional sales contract, and the conditional vendor of this property sought to have the statute declared unconstitutional. The Supreme Court of Oregon held that the statute did not result in the taking of property without due process of law, since the owner of the property was bound to know that its machine and equipment were being used in canning operations and that a lien would attach to the property to insure payment of the poundage fees due the state. [6]

A similar statute was involved in an Alaska case decided by the Court of Appeals for the Ninth Circuit on February 9, 1960. [7] An act of the territorial legislature imposed a tax based on the value of raw fish purchased or otherwise obtained, and provided that such tax should be a prior lien upon—

"* * * all the real and personal property of the person, firm or corporation liable therefor, and also upon all the real and personal property used with the permission of the owner thereof in prosecuting the business * *." [8]

In this case Einstoss used in connection with his fishing and canning business certain tidal and dock property which he had purchased from Schlothan, and in return for which he had given a purchase money mortgage for the entire purchase price. Subsequently, Einstoss defaulted on the terms of the mortgage and Schlothan instituted a foreclosure proceeding. The Territory of Alaska intervened asserting its lien for unpaid raw fish taxes, and claiming that this lien had priority over the Schlothan mortgage. In sustaining the validity of the act, as against constitutional objections, the Court of Appeals said, in part:

"When Lillian Schlothan sold the property on that date and took back a mortgage, she was aware that Einstoss had engaged in cannery operations in

4. State v. Lawton, 1946, 25 Wash.2d 750, 172 P.2d 465.

5. Sargent v. Freeman, 1943, 204 La. 997, 16 So.2d 737, 739.

6. State v. Swensk, 1939, 161 Or. 281, 89 P.2d 587, 591.

7. Schlothan v. Territory of Alaska, 9 Cir., 1960, 276 F.2d 806.

8. Section 4(h), Ch. 82, S.L.A.1949.

Ketchikan earlier that year. She is also chargeable with knowing of the lien provisions of chapter 82. Hence, on June 19, 1951, Lillian Schlothan had constructive notice that when Einstoss acquired title to her property a paramount inchoate lien would immediately attach effective as to all chapter 82 taxes, based on Einstoss' 1951 salmon canning activities before and after that date. This notice was sufficient to meet the requirements of due process." [9]

The Supreme Court of the United States has held that a statute which gave tax lien priority over conditional sales contracts on three trucks, with regard to a highway use tax measured by the operation of the carrier's entire fleet, was not violative of due process on the ground of unreasonableness.[10] The New York statute involved in that case was even more burdensome than the Alaska act, for New York's claim of lien was never a matter of record and the conditional vendor of the trucks was unable to ascertain in advance of the sale the tax liabilities of its conditional vendee.

■ Courts have not attempted to define with precision the words "due process of law." Probably this is so because that term asserts a fundamental principle of justice, rather than a specific rule of law, and thus is not susceptible of more than a general statement. The intent and meaning of this phrase are ascertained in the history of its specific applications to cases where judicial decision is required.[11]

The Alaska legislature had found that economic insecurity due to unemployment was a serious menace to the health, morals and welfare of the people of Alaska. Therefore, it adopted the Alaska Employ-

ment Security Act in order to promote "the public good, and the general welfare of the citizens" of Alaska.[12] The act provided for the compulsory payment of taxes, or what are termed "contributions", in order that unemployment reserves could be set aside to be used for the benefit of persons unemployed through no fault of their own. In order to make the legislative plan work, it was necessary to provide means for the enforced collection of such contributions. Thus, the legislature provided, among other measures, for the imposition of a prior lien for unpaid contributions "against the interest of any employer." [13] There can be no question but that this was well within the authority of the Alaska legislature.

In 1955 the scope of this provision was broadened so as to permit the state's lien to attach, not only against the employer's property, but also against "all the real and personal property used with the permission of the owner thereof in prosecuting the business of the employer." [14] The legislative history of the statute does not disclose the reason for this action by the lawmakers. But it is logical to presume that it was to avoid evasion in payment of taxes; for an employer engaged in business could conceivably nullify the act creating a lien to enforce payment of contributions by using in the operation of his business property belonging to a third person.[15] The question is whether, in thus providing additional means of enforcing collection of the tax, the legislature has exceeded the legitimate boundaries of its broad discretionary power.

It is one thing to take one man's property to satisfy the taxes of another, where the property owner and the taxpayer are strangers. It is quite another thing, how-

---

9. Schlothan v. Territory of Alaska, supra note 7, at page 811.

10. International Harvester Credit Corporation v. Goodrich, 1956, 350 U.S. 537, 76 S.Ct. 621, 100 L.Ed. 681.

11. Willoughby on the Constitution of the United States, 2nd Ed., vol. 3, § 1113, pp. 1685–1686.

12. See Declaration of Territorial Policy in Ch. 4, S.L.A. (Ex. Sess.) 1937 (§ 51–5–20, A.C.L.A.1949 annot.).

13. Section 51–5–14(b), A.C.L.A.1949.

14. Section 514, Art. V, Ch. 5, S.L.A. (Ex. Sess.) 1955 [§ 51–5–148, A.C.L.A.1957 Cum.Supp.].

15. Cf. State v. Swensk, 1939, 161 Or. 281, 89 P.2d 587, 590.

ever, to subordinate the owner's interest in his property to the state's tax lien where he has permitted the taxpayer to use the specific property in the conduct of a business which is subject to the tax. In the first case there would be a burden on the property owner entirely unrelated to any privilege or benefit that he might have enjoyed by reason of operation of the taxpayer's business. In the second case, however, this would not be true. A man who permits his property to be used in the conduct of a business of another presumably derives some privilege or benefit from this circumstance. The liability here, then, so far as the specific property is concerned, may rest upon the enjoyment of such privilege or benefit as to make it reasonable and just to deal with this property as though it were owned by the taxpayer or as if he had an interest in it.

Under the statute involved in this case, such property rights are not affected by the state's lien unless there is such a relationship between the property owner and the employer-taxpayer. Mere use of property alone will not bring the statute into play. There must be use "in prosecuting the business of the employer", and this must be "with the permission of the owner". Only when all of these factors are present does the property become subject to the lien. Thus, a reasonable standard of relationship between the property owner and the employer's business is established by the act.

This is sufficient to overcome objections to the statute on constitutional grounds. A person who leases his property to another is chargeable with knowing the lien provisions of the Employment Security Act.[16] Practically, the statute suggests that the lessor should ascertain for what purposes the property is to be used, and then make appropriate provisions in the lease as to prospective or permissible use. It would also suggest that the lessor secure assurance from his lessee that employment security taxes—if the lessee is likely to be subject to them—will be paid when due.

Presumably a lessor would have adequate means of protecting himself regarding the incidence of such taxes in the event the lessee becomes in default during the term of the lease. But whether or not, as a practical matter, the lessor makes adequate provision for protection of his property, he is presumed to know in advance of making the lease that his property may be subjected to the lien of the state's tax. If, with this knowledge, the lessor enables his lessee to exercise dominion over the property and use it in the conduct of a business subject to the incidence of the tax, then he cannot be heard to complain if his property rights are subordinated to the state's claim of lien.

■ This is not the arbitrary exercise of legislative power. A justifying public purpose, together with a relationship between the burden imposed upon a property owner by the statute and the benefits which he presumably enjoys from permitting the use of his property in another's business, prevents the act from overpassing the bounds of reason. Therefore, the Employment Security Act of Alaska, in giving the state a lien against property of a third person used with his permission in prosecuting the business of an employer, does not deprive such third person of his property without due process of law. The district court, in holding that there was a denial of due process in this respect, was in error.

2. *The Applicability of the Statute.*

The remaining question is whether the act may be applied in the circumstances of this case. At the time that Craig leased its property to Amusement Enterprises in 1952, the lien section of the act provided only for a lien on the employer's property. It was not until 1955 that this was extended to include property belonging to a person other than the employer and used by the latter in his business with the owner's permission.

If a statute is in existence at the time such a lease agreement is made, the parties

---

16. See Schlothan v. Territory of Alaska, 9 Cir., 1960, 276 F.2d 806.

are presumed to know about the law and how the statute might affect their respective rights to property which is the subject of the lease. Provision can be made by the lessor to protect his property against the possible impact of the statute as it relates to the lessee's business operations.

But this is not true where a contract has been made prior to the enactment of the statute and is in effect and binding at the time it takes effect. In 1952, when the lease agreement was made, Craig could not have ben expected to receive assurance from its lessee that Craig's property would not be subjected to a lien for unpaid employment security contributions. And when the law was enacted in 1955, the lease agreement was binding and in effect, and Craig then had no right to modify the terms of the contract. Therefore, it cannot be said that either at the time of the execution of the lease or during its term did Craig have means of safeguarding itself against the enforcement of such third party indebtedness. To charge a person with notice of an existing statute is one thing. It is a far different thing to also charge him with present notice of a lien statute which is not then in existence. In the circumstances of this case that would be unreasonable and would not meet minimum requirements of due process.

When the state's lien was extended to cover "property used with the permission of the owner", the legislature did not expressly provide that this was meant to include property in circumstances such as exist in this case, where the "use" and "permission" antedated the statute and where the owner of the property, after the enactment of the law, had no practical means of protecting himself against the state's claim of lien for unpaid taxes. In the absence of such express provisions, the statute reasonably may be construed as having a more limited application. It ought to be so construed in order to avoid a danger of unconstitutionality. This is a rule adopted by most courts, and one to which this court will adhere.[17]

The state's lien, therefore, did not attach to Craig's property. Although the district court was in error in finding the statute unconstitutional, it reached the correct result in granting Craig's motion for summary judgment and in directing that the lien be released and discharged of record. Therefore, the judgment of the district court, entered May 1, 1959, is affirmed.

17. See Alabama State Federation of Labor, etc. v. McAdory, 1945, 325 U.S. 450, 470, 65 S.Ct. 1384, 89 L.Ed. 1725, 1730.