February 7, 1991

### IN THE SUPREME COURT OF THE
### COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS

| | |
|---|---|
| IN RE THE ESTATE OF )<br><br>JOAQUIN CONCEPCION DELA CRUZ, )<br><br> Deceased. )<br>_____) | APPEAL NO. 90-023<br>CIVIL ACTION NO. 87-0750(P)<br><br>OPINION |

Argued and Submitted October 30, 1990

Counsel for Appellants: Reynaldo O. Yana, Esq.
P.O. Box 52
Saipan, MP 96950

Counsel for Appellees: Vicente T. Salas, Esq.
Salas, Gebhardt & Manibusan
P.O. Box 1309
Saipan, MP 96950

BEFORE: DELA CRUZ, Chief Justice, HILLBLOM and KOSACK, Special Judges.

DELA CRUZ, Chief Justice:

This appeal stems from a Commonwealth Trial Court[1] decision to the effect that real property covered by Title Determination No. 231 (hereafter "T.D. 231") and situated in Tatgua, Rota, belongs to the heirs of Joaquin Concepcion Dela Cruz (hereafter "Joaquin") from his second marriage, to Remedio Taisacan Dela Cruz (hereafter

---

[1]The Commonwealth Trial Court was renamed the Superior Court pursuant to the Commonwealth Judicial Reorganization Act of 1989, P.L. 6-25 (codified at 1 CMC §§ 3101-3404).

4

"Remedio"), and that Joaquin's heirs from his first marriage, to Nicolasa Fejerang Dela Cruz (hereafter "Nicolasa"), have no interest in the property. The appellants are the disappointed heirs from Joaquin's first marriage.

I.

A. Factual Background

Joaquin and Nicolasa were originally from Guam. They moved to Rota around the turn of the century and had five children. After Nicolasa died, Joaquin married Remedio, a resident of Rota, on June 12, 1911. Joaquin's second marriage produced four children.

Remedio died in 1928, survived by Joaquin and their children.

When Remedio married Joaquin, she received from her parents property situated at San Haya, Rota. After her death, Joaquin exchanged the San Haya property with the Japanese Administration for the Tatgua property. Also exchanged in the transaction was a parcel of land belonging separately to Ignacio Dela Cruz, one of Joaquin's children from his first marriage.

After World War II, Joaquin moved to Guam, where he died in 1948.

On April 22, 1958, Vicente T. Dela Cruz, a son from Joaquin's second marriage, filed a claim of ownership to the Tatgua property. Shortly thereafter, a Trust Territory Government land title officer issued T.D. 231, which determined the Tatgua property to be "the property of the heirs of Joaquin Dela Cruz, deceased, represented by Vicente Taisacan Dela Cruz, as Land Trustee." The property was described as "containing an area of 9.8 hectares, more or less,

5

subject to survey."

On or about April 18, 1975, the Northern Mariana Islands Land Registration Team issued formal notices to a number of landowners in Rota scheduling registration hearings for over three hundred parcels covered by various title determinations previously issued by the district land title office. In response to this notice, on May 29, 1975, Vicente T. Dela Cruz filed a formal application to register the Tatgua property covered by T.D. 231. In addition to himself, his application listed as "legal heirs" Ignacio Dela Cruz, Odilo Dela Cruz, Alfra Dela Cruz and Felimena Cruz Cabrera. Except for Ignacio Dela Cruz, no children or other heirs of Joaquin from his first marriage were listed.

On March 6, 1984, the Northern Mariana Islands Land Commission issued a certificate of title to Vicente T. Dela Cruz. According to the certificate, the Tatgua property covered by T.D. 231 belonged to the "Heirs of Joaquin Dela Cruz, represented by Vicente Taisacan Dela Cruz, as Land Trustee."

B. Procedural Background

A grandson of Joaquin through his second marriage, Pedro Q. Dela Cruz (hereafter "the administrator"), petitioned the trial court to probate Joaquin's estate. He was subsequently appointed administrator. In the inventory of the estate he filed with the court, the only asset listed was the Tatgua property covered by T.D. 231.

The probate petition alleged as Joaquin's presumptive heirs only those heirs surviving from his second marriage. Joaquin's

6

surviving heirs from his first marriage subsequently filed a claim of interest with the administrator. They asserted that as surviving heirs of Joaquin, they were also entitled to share in his estate and that they, therefore, also had an interest in the Tatgua property. The administrator rejected their claim.

An evidentiary hearing was thereafter held to determine whether Joaquin's heirs from his first marriage had an interest in the Tatgua property. The trial court admitted certain hearsay testimony concerning the ownership history of the property.

Following the hearing, the trial court ruled that T.D. 231 was "contrary to the facts and . . . erroneous"[2] since the Tatgua property was obtained in exchange for land which belonged to Remedio, the second wife, and that only Joaquin's surviving heirs from his marriage to her had an interest in the property.[3]

This appeal followed.

## II.

The appellants raise the following issues for our review:

1. Whether the trial court "abuse[d] its discretion by setting aside the Determination of Ownership No. 231 in that its action was contrary to applicable laws of the Commonwealth of the Northern Mariana Islands."

---

[2]In re Estate of Dela Cruz, Civil Action No. 87-750(P), Corrected Decision at 5 (N.M.I. Tr. Ct. July 6, 1988).

[3]Id. at 5-6. An exception was made for the heirs of Nicolasa's son Ignacio Dela Cruz, who were held to be entitled to 2.1 hectares of the Tatgua property because Ignacio's property had been included in the exchange for the Tatgua property.

2. Whether the trial court erred "in determining that the children of Joaquin Dela Cruz by his first wife were not entitled to a share in the estate of Joaquin Dela Cruz."

3. Whether the trial court "abuse[d] its discretion by allowing hearsay evidence to be admitted over the objection of the appellant's counsel."

The issue of whether T.D. 231 constitutes an administrative adjudication which has become conclusive under res judicata principles is a question of law and is reviewable de novo. See 73A C.J.S. Public Administrative Law and Procedure §§ 155, 156.

The issue of whether Joaquin's children by Nicolasa have an interest in the Tatgua property covered by T.D. 231 is a conclusion of law and is also reviewable de novo. 26A C.J.S. Descent and Distribution § 82 (1956).[4]

The trial court's decision to admit hearsay evidence is subject to review for abuse of discretion. Commonwealth v. Delos Santos, 3 CR 661 (D.N.M.I. App. Div. 1989).

III.

A. T.D. 231 and the Determination of Heirs

We shall address the first two issues together since the question of heirship interest in the Tatgua property is intertwined with the issue of the conclusiveness of T.D. 231.

_____

[4]"The question as to who are heirs of a deceased person is strictly a question of law for the court . . . ." Id. See also 8 CMC § 2202(a) (trial court has "jurisdiction over all subject matter relating to estates of decedents, including . . . determination of heirs and successors of decedents").

8

T.D. 231 specifies that the Tatgua property belongs to "the heirs of Joaquin Dela Cruz." It does not indicate whether only Joaquin's heirs from his second marriage have an interest in the Tatgua property. The appellants, the heirs from Joaquin's first marriage, contend that since T.D. 231 specifies that the Tatgua property belongs to Joaquin's heirs without any qualification, <u>all</u> of his heirs have an interest in the property. They further contend that since T.D. 231 was not challenged or appealed after its issuance, it became a final administrative ruling and, under the doctrine of res judicata, may not be set aside.

T.D. 231 was issued pursuant to Land Management Regulation No. 1 (hereafter "the regulation"), which was promulgated in 1953 by the Office of the Trust Territory High Commissioner. The purpose of the regulation was, inter alia, (a) to provide a procedure for the determination of ownership of privately held lands that were or had been occupied by the U.S. Government or the Trust Territory Government, and (b) to return such lands to their owners. Land title officers were empowered to determine land ownership and to release the lands so determined to their respective owners.

The regulation specifies procedures for the filing of land claims, for notice of hearings, for conduct of hearings (including the reception of evidence) and so forth. In addition, it provides that:

> Where an estate is determined to be claimed jointly or in common by the heirs of a deceased owner . . . the District Land Title Officer may appoint one or more persons to act as trustee or trustees for the group . . . . The Land Trustee shall act as administrator of lands of deceased persons, <u>and shall take immediate steps to</u>

9

<u>determine the persons interested in the land as heirs or otherwise, and to have the land distributed according to law or the desires of the true owners</u>, subject to approval of the courts in the event of controversy.

Regulation § 9(a) (emphasis added).

The regulation further provides that after issuance of a determination of ownership, any person having or claiming an interest in the land concerned could appeal the determination to the Trial Division of the High Court within one year from the date the determination was filed in the Office of the Clerk of Courts. <u>Id</u>. § 14.

Subsequent to the issuance of T.D. 231 in 1958, there was apparently no step taken by land trustee Vicente T. Dela Cruz either to determine the persons interested in the land as heirs or to distribute the land "according to law or according to the wishes of the true owners . . . ." <u>Id</u>. § 9(a). It was not until 1975 that, in his application for the registration of the Tatgua property, Vicente listed the names of the heirs whom he believed to have an interest in the property.

We find that the administrative scheme established by the regulation gave district land title officers the authority to administratively decide the ownership of privately-owned lands. In reviewing the regulation, we determine that the function of the District Land Title Office was quasi-judicial in nature,[5] with an

---

[5]<u>See</u> <u>Theo v. Trust Territory</u>, 2 T.T.R. 149, 150 (High Ct. Tr. Div. 1960): "[t]he court is firmly of the opinion that a District Land Title Officer, when making a Determination of Ownership under Office of Land Management Regulation No. 1, is acting in a quasi-judicial capacity . . . ."

10

avenue provided for review by the High Court of its administrative adjudications. Since T.D. 231 was never appealed, this ownership determination became final under the principle of administrative res judicata.[6]

After it has become final, a quasi-judicial administrative ruling such as T.D. 231 should ordinarily be given res judicata effect, and may not be set aside unless it was (1) void when issued, or (2) the record is patently inadequate to support the agency's decision, or if according the ruling res judicata effect would (3) contravene an overriding public policy or (4) result in a manifest injustice.[7] None of these exceptions apply in this case.

---

[6]Cf. Aldan v. Kaipat, 2 CR 190 (D.N.M.I. App. Div. 1985), aff'd 794 F.2d 1371 (9th Cir. 1986), which suggests that a Trust Territory Government Determination of Ownership will be upheld in NMI courts only if sufficient evidence exists in the record to support the determination. However, according to a leading U.S. Supreme Court opinion:

> Occasionally courts have used language to the effect that res judicata principles do not apply to administrative proceedings, but such language is certainly too broad. When an administrative agency is acting in a judicial capacity and resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate, the courts have not hesitated to apply res judicata to enforce repose.

United States v. Utah Construction & Mining Co., 384 U.S. 394, 421, 86 S.Ct. 1545, 1559-60, 16 L.Ed.2d 642 (1966). We believe that this is the better approach in assessing the conclusiveness of quasi-judicial administrative rulings--along with the caveats expressed above.

[7]According to the federal Ninth Circuit Court of Appeals:

> We recognize the importance of administrative res judicata; however, enforcement of that policy must be tempered by fairness and equity.

11

Prior to the filing of this probate, there had never been any steps taken to determine the heirs of the Tatgua property, or to distribute the property "according to law or the desires of the true owners . . . ." Regulation § 9(a). Neither T.D. 231 nor the subsequent Northern Mariana Islands Land Commission determination of ownership settled these issues. Both questions have thus remained open for judicial resolution. They are not barred by res judicata.[8]

## B. Ownership History of the Tatgua Property

In view of the fact that Joaquin had two sets of heirs, both

---

> Neither collateral estoppel nor res judicata is rigidly applied. Both rules are qualified or rejected when their application would contravene an overriding public policy or result in a manifest injustice.
>
> Tipler v. E. I. duPont deNemours and Co., 443 F.2d 125, 128 (6th Cir. 1971). Res judicata of administrative decisions does not acquire the rigid finality of judicial proceedings. Where the record is patently inadequate to support the findings the [agency] made, application of res judicata is tantamount to a denial of due process. Fairness in the administrative process is more important than finality of administrative judgments.

Thompson v. Schweiker, 665 F.2d 936, 940-41 (9th Cir. 1982) (some citations omitted).

[8]See Frank v. Capital Cities Communications, Inc., 689 F.Supp. 334 (S.D.N.Y. 1988) (since claims in complaint not part of litigated claims before state agency, not barred by res judicata); 73A C.J.S. Public Administrative Law and Procedure § 156 (doctrine of res judicata does not apply to issues not raised before state administrative agency). See also Sablan v. Iginoef, No. 89-008 (N.M.I. June 7, 1990) (general rule of res judicata bars subsequent litigation only as to matters concerning the claim addressed in the original judgment).

12

of whom are involved in this action, it was necessary for the trial court to inquire into the ownership history of the Tatgua property. Its factual finding that the property was obtained in exchange for the San Haya property which Joaquin's second wife Remedio received from her parents as her separate property is supported by the record and is therefore not clearly erroneous. Although Joaquin executed the exchange of the San Haya land with the Japanese Administration for the Tatgua property after Remedio's death, there is no evidence in the record showing that ownership of the land acquired in the exchange shifted from Remedio to Joaquin. See, e.g., Blas v. Blas, 3 T.T.R. 99 (High Ct. Tr. Div. 1966) (land acquired in exchange with the government takes the place of that given up and carries with it all the incidents that were attached to the land given up). Under Chamorro custom, lands of the parents ("iyon manaina") is eventually intended to go to the parties' children by partida or descent. A married woman's separate property is managed during marriage by the husband. Ada v. Sablan, No. 90-006 (N.M.I. November 16, 1990). Thus, although T.D. 231 specified "the heirs of Joaquin Dela Cruz" as owners of the Tatgua property, it does not necessarily follow from that determination that the property at issue belongs to Joaquin's estate.

The San Haya property had been acquired by Remedio as her separate property. Its character as her separate property never changed. Ada, slip op. at 8 (under Chamorro custom, both husband and wife retain individual ownership over property that each brings into a marriage). The fact that Joaquin exchanged it for the

13

Tatgua property conforms with the Chamorro custom of the husband managing his wife's property. Ada, slip op. at 7. The Tatgua property did not thereby become Joaquin's separate property. Instead, it took the place of the San Haya property and remained Remedio's separate property. Blas, supra.

In this case, the underlying issue at the probate hearing was the ambiguity inherent in T.D. 231's phrase "heirs of Joaquin Dela Cruz."

It was not necessary for the trial court to find that T.D. 231 was erroneous. T.D. 231 established that the Tatgua property was not owned by the government and that the owners were persons within that class of people known as the "heirs of Joaquin Dela Cruz." After its issuance, it was Vicente T. Dela Cruz's task to determine which persons within that group owned the property and to distribute the property to them. Regulation § 9(a). This was never done, so this matter may be judicially addressed at this time.

Since it had become final, T.D. 231 could not be set aside by the trial court. It is res judicata as a quasi-judicial ruling. In this case, however, the trial court was not precluded from determining the owners of the Tatgua property from within that class of persons known as the "heirs of Joaquin Dela Cruz." The trial court determined that Joaquin's heirs from his marriage to Remedio are the owners of the property. We believe that this is not only the correct determination, but that it is consistent with T.D. 231. In other words, T.D. 231 was not erroneous and the trial

14

court did not need to find it erroneous in order to reach its decision.

We agree with the trial court that the Tatgua property described in T.D. 231 belongs (as shown by the evidence) to the estate of Joaquin's second wife, Remedio, and that, therefore, only Joaquin's heirs from his marriage to her have an interest in the property. To the extent that it determined the owners of the property to be Joaquin's heirs, T.D. 231 is correct but ambiguous. The evidence adduced at the probate hearing supports the trial court's ultimate finding that the Tatgua property should descend to those heirs from Joaquin's second marriage, since the property came from Joaquin's second wife.

Under the facts of this case, it would be contrary to NMI inheritance law and Chamorro custom to permit Joaquin's heirs from his first marriage to share in property which belonged to his second wife. In the absence of a statute conferring the right of inheritence, stepchildren cannot inherit from a stepparent's estate. 26A C.J.S. Descent and Distribution § 34 (1956); see also In re Estate of Smith, 299 P.2d 550 (Wash. 1956).

We hold that the trial court erred, as a matter of law, in setting aside T.D. 231, a valid and final administrative adjudication. However, because the court's ultimate ruling ("[t]he heirs of Joaquin from his second marriage, which was to Remedio[,] are entitled to the [Tatgua] land . . . ."[9]) was

---

[9]Estate of Dela Cruz, corrected decision at 6.

15

correct, we find that the error was harmless.[10]

## C. Admission of Hearsay Evidence

 We now turn to the final issue: whether the trial court erred in admitting hearsay evidence with respect to the ownership history of the Tatgua property. We hold that the trial court did not abuse its discretion in admitting this evidence.

The objection to the introduction of the evidence was immediately withdrawn by the appellants' trial counsel, as appears from the record:

> MR. BORJA: Mrs. Cabrera, can you tell the court how . . . you know that this property at San Haya [was] inherited by your mother [Remedio]?
> WITNESS: From her parents because my father [Joaquin] told me.
> MR. BORJA: Your father told you?
> WITNESS: Yes.
> MR. BORJA: How do you know that this property at San Haya was exchanged [for] the one at Tatgua?
> WITNESS: I have knowledge of that.
> MR. BORJA: Your father told you too?
> MR. ATALIG: Objection, Your Honor, are we going to be allowing hearsay in this proceeding?
> MR. BORJA: That is exception to the family land.
> MR. ATALIG: If we are then I would like--because I would use hearsay also.
> MR. BORJA: Your Honor, there's an exception under the Rules of Evidence with regard to family history and especially regarding family land.
> MR. ATALIG: If we're going to allow this type of testimony then I would be open also to use it.
> . . . .
> MR. ATALIG: I have no objection if the court would allow me to use it.

---

[10]A trial court decision should be affirmed if the result is correct, even though the court relied upon a wrong ground or the judgment or order complained of contains an inaccurate or erroneous declaration of law. See, e.g., Territory v. Craig Enterprises, Inc., 355 P.2d 397 (Alaska 1960); State v. Alexander, 324 P.2d 831 (Wyo. 1958).

Transcript of Proceedings at 17-18.

██ Because the objection was withdrawn, this issue may not be raised on appeal. See 88 C.J.S. Trial § 196 (1955) (an objection is waived by its withdrawal).

Based on the foregoing, we therefore AFFIRM the trial court's decision that the Tatgua Property encompassed by T.D. 231 belongs to the heirs of Joaquin Concepcion Dela Cruz from his second marriage to Remedio Taisacan Dela Cruz, except for 2.1 hectares thereof which separately belongs to the heirs of Ignacio Dela Cruz.[11]

Entered at Saipan, MP, this _____7th._____ day of February, 1991.

_____
Jose S. Dela Cruz, Chief Justice

_____
Larry L. Hillblom, Special Judge

_____
Rexford C. Kosack, Special Judge

---

[11]See footnote 3, infra.